598 P.2d 1022

Paul WENNER, City of Phoenix Treasurer, and City of Phoenix, Appellants,

v.

DAYTON–HUDSON CORPORATION, a Minnesota Corporation, Appellee.

No. 1 CA–CIV 3967.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 7, 1979.

Andrew Baumert, Phoenix City Atty. by Philip M. Haggerty, Asst. City Atty., Shimmel, Hill, Bishop & Gruender, P. C. by Lawrence J. Lee, and Susan R. Bolton, Phoenix, for appellants.

Ryley, Carlock & Ralston by A. Daniel Sheffield, Jr., Phoenix, for appellee.

## OPINION

DONOFRIO, Acting Presiding Judge.

This is an appeal by defendants/appellants, City of Phoenix, from an adverse decision by the Superior Court of Maricopa County holding that the income received by plaintiff/appellee from certain agreements with retailers was not taxable under the Phoenix City Code § 14–2(a)(12).

We are called upon to determine two questions. First, whether the trial court erred when it found that the agreement involved was not a lease, but a license, and secondly, whether the presumption in favor of taxability and against exemptions from taxation mandates that the agreement be treated as a lease for tax purposes under § 14–2(a)(12).

The pertinent undisputed facts can be stated as follows: Appellee operates department stores within the city limits of Phoenix under the trade name "Diamonds." As part of its business operations, appellee enters into agreements with other retailers to maintain certain departments within its stores. Some of these departments for example include: the beauty salon, the shoe department, the fur salon and the furniture department.

The agreement entered into grants the retailer the exclusive right to operate a particular type of department within appellee's store, and the retailer is allowed to conduct only that type of business within the store. In consideration of appellee furnishing certain services, the retailer pays appellee a percentage of his gross receipts with a minimum monthly payment designated. The agreements are for a definite term and are automatically renewed absent any notice of termination, but the appellee may terminate the agreement at any time the retailer is in default.

The income derived by appellee from these agreements was assessed a one (1) percent privilege tax by appellant City of Phoenix through Paul Wenner, the City Treasurer, under the provisions of § 14–2(a)(12). Appellee paid the assessed tax under protest and was granted a hearing by appellants. Appellant Wenner found that the tax was proper and upheld the tax as assessed. After exhausting the administrative remedies provided, appellee brought an action in the Superior Court challenging the tax. The trial court granted appellee's motion for summary judgment and entered judgment in favor of appellee for $20,364.22 plus interest and costs. This appeal followed.

Section 14–2 of the Phoenix City Code provides in part as follows:

"There is hereby levied upon persons on account of their business activities within the City and shall be collected by the collector for the purpose of raising revenue to be used in defraying the necessary expenses of the City, privilege taxes to the extent hereinafter provided, to be measured by the gross sales or gross income of persons, whether derived from residents of the City or not, or whether derived from within the City or from without, and all of said gross sales or gross income shall be used to measure the tax with exceptions as set forth in Subsections (b) and (d) of this Section, and in Section 14–40 and Section 14–41 of the Phoenix City Code in accordance with the following schedule:

(a) An amount equal to one percent of the gross proceeds of sale or gross income from the business upon every person engaging or continuing within the City in the following businesses:

\*　　\*　　\*　　\*　　\*　　\*

(12) *Leasing or renting for a consideration the use or occupancy of real property,* including any improvements, rights or interest in such property to the person in actual possession or occupation of the leased premises." (Emphasis supplied.)

Appellants contend that the agreement between appellee and the retailer is a lease and not a license. They argue that if one looks beyond the words used in the agreement calling it a license and views the provisions of the agreement as a whole, the legal effect is a lease and not a license. In support of this argument appellants cite several cases. We shall hereinafter discuss these authorities.

Section 5 of the agreement in question sets forth a declaration of the parties' intent that the agreement is a license. Though this clause is persuasive, it is not controlling upon us, and we must determine if the whole agreement is in accord with this intent and only creates a license agreement.

"Section 5. *Licensee engaged in an independent business*

\*　　\*　　\*　　\*　　\*　　\*

(d) *This agreement shall be construed as a mere license* by Licensor to Licensee to operate said concession in said store of licensor. *It shall not be construed as a lease, sublease or rental agreement.* It is understood and agreed that licensee has no interest whatsoever in the real property upon which the concession is operated and no right to exclusive possession of any portion of licensor's store building. \* \* \*." (Emphasis supplied.)

Under the agreement appellee was obligated to furnish the licensee/retailer an agreeable amount of space in its store, but such space was not specifically delineated within the agreement. In fact, the space may be changed from time to time at appellee's direction. The agreement provides that the retailer is not granted any interest whatsoever in the real property upon which the department is operated or exclusive possession of any particular portion of appellee's building. The licensee-retailer only has access to appellee's store when said store is open to the public, and may only conduct business at such times as it is open.

Appellee requires licensee to use appellee's trademark and its trade name in conducting its business. Thus, licensee receives the benefit of being able to do business under the respected and generally known name of appellee. Further, appellee provides licensee with:

"\* \* \* regular lighting, electrical, air-conditioning, elevator and escalator service \* \* \* deposit and change cashier service \* \* \*, charge account service \* \* \*, sales books \* \* \*, \* \* \* wrapping supplies, one (1) telephone, \* \* \* telephone service, \* \* janitor service \* \* \*, hot and cold water and heating \* \* \*." [Section 7(a)].

For the right to use appellee's name and trademark and for the services provided licensee agrees to reimburse appellee a percentage of the sales it experiences by doing business in appellee's store.

We find every indication that the parties have intended to create a licensor-licensee relationship in the instant agreement. Bearing this in mind we shall now look at the authorities cited by appellants.

Appellants cite *Beckett v. City of Paris Dry Goods Co.,* 14 Cal.2d 633, 96 P.2d 122 (1939), for the proposition that the agreement contained in that cause is nearly identical to the one in question here and that the California courts construed that agreement to be a lease instead of a license. Appellants seem to rely heavily on the particular statement concerning the non-assignability provision of the agreement in the *City of Paris* case to hold that it was a lease. Appellants try to convince this Court that the California Supreme Court based its decision that the agreement was a lease solely on the presence of a non-assignability clause in the agreement.

We do not agree with appellants' argument as it concerns the *City of Paris* case as we can distinguish it from the present set of facts. From a reading of *City of Paris,* and the case of *Case v. Kadota Fig Ass'n of Producers,* Cal.App., 207 P.2d 86 (1949), and subsequent Supreme Court opinion, 35 Cal.2d 596, 220 P.2d 912 (1950), we find that the California court was persuaded most heavily by factors other than the non-assignability clause of that agreement. In *Kadota Fig,* supra, the California appellate court stated that the agreement in *City of Paris* "was held to be a lease mostly because the use of terminology like 'this lease,' 'good, *tenantable condition,*' 'space demised' showed that this was the relation (sic) which the parties intended." 207 P.2d at 96 (Emphasis supplied.)

The provisions of the agreement before us in the instant appeal do not contain such characteristic terminology of a lease. We do not find, as was present in *City of Paris,* anything in the instant cause that shows the intention to create a landlord/tenant relationship, or the giving of exclusive possession or an interest in the property over and above a personal right of operation as against appellee.

The non-assignment clause contained within the instant agreement, upon close examination, is not the routine non-assignment clause of a lease, but a correct statement of the law putting a licensee on notice of his inability to assign this agreement, and that if he attempts an assignment he will be in breach of his contract. We include the clause for a better understanding of its content:

"Section 19. Assignment

This agreement is personal to the licensee, and licensee may not assign this agreement or any right thereunder nor give any security interest therein or in any rights thereunder nor may this agreement be assigned by operation of law. Any assignment of this agreement or rights thereunder by licensee or by operation of law or the giving of any security interest therein shall at licensor's option constitute a breach of this agreement and be void."

The *Kadota Fig* case further gives support to our holding that the agreement is a license when it notes that "the rule of revocability of a license at pleasure is not without modifications and exceptions." This language is in compliance with the Restatement of Property § 519, comment b. (1944) which reads:

"The fact that a license is terminable at the will of the licensor does not necessarily mean that the licensor can terminate it without incurring liability for doing so. It means only that the interest in land which the license constitutes has disappeared. The licensor may be bound by contract not to so exercise his will as to terminate the license, and when so bound will be liable in damages for breach of his contract." Restatement of Property § 519 Comment b (1944) [See also other comments of § 519.]

Next, appellants cite the case of *In re Owl Drug Co.,* 12 F.Supp. 439 (Nevada District Court 1935), in support of their argument. However, we must again distinguish this case from the instant appeal. The *Owl Drug Co.* case agreement again has language and provisions throughout it showing

an intent of the parties to create a lease. The terms "lessor" and "lessee" are used throughout the agreement, and the phrase "rent for the premises" is used to describe the money paid each month for the use of the area. The *Owl Drug Co.* court found the following clause to be most significant in finding the agreement to be a lease:

" * * * and the abatement of the use of said building or the premises herein leased by reason of any breach of any of said rules or regulations by said lessee, his agents, servants or employees shall not terminate or in any way affect the obligations of the lessee hereunder." 12 F.Supp. at 443.

The *Owl* court further said in explanation of this clause:

"In other words, upon the abatement of the use of the building or of the portion leased, brought on by any act of the lessee, he is not released from any of the obligations under the lease." 12 F.Supp. at 443.

The agreement before this Court does not contain such a provision. Once the agreement has been terminated for a breach, licensee is liable only for accrued debts and contract damages, not for lost rent as it would be if the agreement was a lease.

We also note that the agreement. in the *Owl Drug Co.* case contained a clause which would not allow the "lease" to be assigned or transferred, or any part of the premises be sublet without the written consent of the lessor. Further, the agreement provided that the terms, covenants and conditions of the "lease" are made to "enure" to the benefit of the "lessee," his "executors" or "administrators," and any of his "successors" or "assigns" who have become such by consent of the "lessor." These all being terms and conditions of a lease and not a license the *Owl* and *Paris* agreements are distinguishable from our instant agreement.

Appellants lastly cite *Mattson v. County of Contra Costa*, 258 Cal.App.2d 205, 65 Cal.Rptr. 646 (1968), in support. Again, this case is distinguishable from the instant facts. In *Mattson* the Court found that the agreement gave such a valuable use of the land and improvements that it was sufficient amount to a possessory interest. We cannot find in the agreement before us that a possessory interest was given to the retailers by appellee.

■ The agreement used by appellee is carefully drawn, perhaps with the above-cited cases in mind, and has created what the parties intended, a license, and nothing more. From the foregoing we can only conclude that as a matter of law the agreement between appellee and its merchant retailers does not rise to the level of a leasehold interest, but is a mere license.

Appellants, at oral argument before this Court, contended that the City Ordinance § 14–2(a)(12) is broad enough to tax even a license agreement. With this contention we disagree.

The Arizona Supreme Court has stated many times that revenue statutes should be construed liberally in favor of the taxpayer and strictly against the State. In *Arizona State Tax Comm. v. Staggs Realty Corp.*, 85 Ariz. 294, 297, 337 P.2d 281, 283 (1959), the Supreme Court stated that, "it is especially important in tax cases to begin with the words of the operative statute. We have repeatedly said that such words will be read to gain their fair meaning, but not to gather new objects of taxation by strained construction or implication." See also: *Ebasco Services Inc. v. Arizona State Tax Comm'n*, 105 Ariz. 94, 97, 459 P.2d 719, 722 (1969).

■ The ordinance is very specific in the activity that will be taxed. It uses the language "leasing or renting for a consideration the use or occupancy of real property, including any improvements, rights or interest in such property to the person in actual possession or occupation of the leased premises." We do not have a leased premises involved in the instant action, nor have any rights and interest in real property been conveyed. The agreement before us only allows the merchant retailers the personal privilege of being on and doing business on, appellee's property without being treated as trespassers. Thus, we can not find that the ordinance assessing a privilege tax is applicable to the present situation. See A.C.R.R. R15–5–1609 and Mesa Munici-

pal Code § 5–10–1(13) for examples of how other taxing jurisdictions have handled the situation.

 Appellants make a correct statement of law when they argue that statutes granting an exemption are strictly construed against exemption from taxation. See *Meredith Corporation v. State Tax Commission*, 23 Ariz.App. 152, 154, 531 P.2d 197, 199 (1975). However, we are not persuaded by this argument. In the appeal before this Court appellee is not claiming an exemption to the ordinance, but is claiming that the ordinance does not tax the activity engaged in by appellee at all.

 Even if there had been an ambiguity in the language of the ordinance, the Supreme Court of Arizona has previously held that:

> "This Court has repeatedly held that the rule of statutory construction is that statutes imposing taxes will be most strongly construed against the government and in favor of the taxpayer or citizen * * * and that *any doubts as to their meaning are to be resolved against the tax authority and in favor of the taxpayer.*" *City of Phoenix v. Borden Company*, 84 Ariz. 250, 252–3, 326 P.2d 841, 843 (1958). (Emphasis supplied.)

If a presumption was created by the application of the Phoenix City Code § 14–25 [1] the burden of the appellee has been fully met and appellee has shown that its activity is not taxable under § 14–2(a)(12). Such a presumption when defeated will not give rise to an exemption to the taxation as argued by appellant, but proves that the activity was covered by the tax *ab initio*.

We find that the trial court has made a proper finding in this cause and therefore affirm the judgment as entered.

Judgment affirmed.

HAIRE and ROBERT C. BROOMFIELD,* JJ., concurring.

1. Sec. 14–25 Phoenix City Code

"For the purpose of the proper administration of this Article and to prevent evasion of the tax hereby imposed, it shall be presumed that all gross receipts are subject to the tax until the contrary is established."