THEODORE N. REEDER AND ROSALIE M. REEDER, APPELLANTS, V. DANA REEDER, APPELLEE.

348 N.W.2d 832

Filed April 27, 1984. No. 83-453.

Rodney S. Sederstrom of Erickson, Sederstrom, Leigh, Eisenstatt, Johnson, Kinnamon, Koukol & Fortune, P.C., for appellants.

Dennis R. Riekenberg of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

KRIVOSHA, C.J., WHITE, and CAPORALE, JJ., and McCOWN and BRODKEY, JJ., Retired.

PER CURIAM.

This appears to be a case of first impression in this jurisdiction and presents the question of whether one who occupies the home of another with the owner's permission, and who negligently causes damage to the home, may be sued by the owner's insurance carrier under a right of subrogation after the insurance carrier has paid the owner for the damages. The trial court concluded that the cause of action did not lie. We believe that the trial court was correct, and, accordingly, we affirm.

Theodore N. Reeder and Rosalie M. Reeder, husband and wife, were the owners of a residence located in Omaha, Nebraska. In August of 1979 they moved to Arlington, Texas, still owning the home in Omaha. Reeder's brother, Bernard Reeder, who lived in Omaha, was in the process of constructing a new home for himself and his family. The brothers agreed that Bernard Reeder and his family could occupy the Theodore Reeder home in Omaha while the Bernard Reeders were awaiting the completion of their new home. As one would anticipate in arrangements of this type, there was no formal agreement and little discussion regarding the informal agreement. Theodore Reeder testified:

We didn't have a lease, he did not lease it from me, he was only living in it. He was building a house of his own in the neighborhood, and he wanted to get his children in Christ the King School as soon as possible, and my house was sitting there vacant and he asked me if he could move in while he was completing his house and be closer to it, and get his kids in the school district right away. And I said that is fine, because it is sitting there vacant, and I can sell it with furniture in it just as easy as I can without; and you move in, and that is fine.

Further, Theodore Reeder testified that "there was no rent paid and no agreement. He was to just take care of it and shovel the snow, live in it. Pay the utility bills, which I wouldn't have to pay." The brothers understood that Theodore Reeder, the owner, would pay the taxes, but no rent was to be paid by Bernard to Theodore. Additionally, Theodore Reeder testified that he specifically told his brother "that I would leave my insurance policy that I had on it on it while he was in there, and I didn't really discuss any part of his homeowner's or anything else. I just assumed he would take care of that. But we did discuss that I would leave my policy on it."

On March 4, 1980, while occupying the house, Dana Reeder, Bernard's daughter, ignited the gas fireplace in the family room of the house. Allegedly, she failed to open the damper, which caused a fire resulting in substantial destruction to the home.

Cornhusker Casualty Company, Theodore Reeder's carrier, paid the sum of $139,760 to Theodore Reeder and obtained in return a subrogation receipt. Cornhusker then filed suit against Bernard Reeder and Patricia Reeder, parents of Dana Reeder, as well as against Dana Reeder herself. The parents were dismissed from the action, and no appeal has been taken from that order. It is therefore final and binding and not at issue in this appeal. Following the

order dismissing the parents, Dana Reeder filed a motion for summary judgment. On May 11, 1983, the trial court sustained the motion for summary judgment and dismissed the action as against the remaining defendant, Dana Reeder.

It is from that order, dismissing the petition against Dana Reeder, that Cornhusker appeals, assigning as error, in essence, the following claims: (1) That the granting of the summary judgment was inappropriate under the facts of the case; (2) That the trial court erred in finding that the relationship between the parties was that of landlord/tenant; (3) That the trial court erred in finding the majority rule prohibits a landlord's insurer from subrogating against a negligent tenant.

While we believe that the order of the trial court was correct, we should at this point note that nothing in either the motion for summary judgment or in the trial court's order sustaining the motion for summary judgment indicates the basis upon which the trial court rendered its judgment. There are no findings in the trial court's order that the relationship between the parties was that of landlord/tenant, nor any finding that the trial court was adhering to any particular rule, majority or minority. The motion for summary judgment simply asks that judgment be granted "for the reason that the pleadings, including all discovery pleadings filed herein, and the depositions filed herein establish that there is no genuine issue as to any material fact, and defendant is entitled to a judgment as a matter of law." And the order of the trial court sustaining the motion for summary judgment simply recites: "Motion of defendant Dana Reeder for summary judgment is sustained."

The issue whether the relationship between Theodore Reeder and his brother, Bernard Reeder, was that of landlord/tenant, as urged by appellee, or that of licensor/licensee, as urged by appellant, is raised in part by Dana Reeder's amended answer and by

the briefs of the parties to this court. It is not, however, a part of either the motion for summary judgment or the court's order. Nor do we believe that attempting to categorize this relationship is either material or helpful. One of the difficulties we too often encounter in the law is our effort to attempt to force every situation into a known and recognized relationship, hoping that by doing so the answer to our question may of necessity automatically follow.

In the instant case, we believe the facts would disclose that the relationship created between Theodore Reeder and his brother, Bernard Reeder, was neither landlord/tenant nor licensor/licensee in the full legal sense. To be sure, the relationship has characteristics of both landlord/tenant and licensor/licensee, but of a separate and unique kind, and in this instance meriting a different treatment. In *Friend v. Gem International, Inc.*, 476 S.W.2d 134, 137-38 (Mo. App. 1971), it was noted:

> The status of landlord and tenant is defined, generally, to arise from contract, express or implied, under the terms of which a person designated as "tenant" enters into possession of land of another, known as "landlord", with the rights of the tenant subordinate to the landlord. "The essentials of that relationship are said to be (1) a reversion in the landlord, (2) the creation of an estate in the tenant, either at will or for a term less than that for which the landlord holds, (3) *the transfer of exclusive possession and control of the premises to the tenant*, and (4) a contract, either express or implied, between the parties." Johnson v. Simpson Oil Company, Mo.App., 394 S.W.2d 91, 96 [4]. On the other hand, the condition of licensor and licensee has also been defined, generally, to arise when one who owns or possesses land known as the "licensor" grants to another known as "licensee" the privilege of going onto land for a certain purpose without passing an estate in the land.

(Emphasis supplied.) See, also, *Bentley v. Palmer House Company*, 332 F.2d 107 (7th Cir. 1964); *Gage v. City of Topeka*, 205 Kan. 143, 468 P.2d 232 (1970). As noted in 49 Am. Jur. 2d *Landlord and Tenant* § 6 at 47 (1970), the legal status of parties in their relationships one to the other "is a question of which direction the general effect of the various tests that have been applied, after weighing opposing ones against each other, can be said to take."

An express agreement to create a landlord/tenant relationship is not necessary; nevertheless, the evidence must indicate that the parties intended to impliedly create such an arrangement, including the fact that by entering into this arrangement the tenant acquired certain rights and the landlord assumed certain obligations. See *Bodie v. Epler*, 132 Neb. 442, 272 N.W. 249 (1937). We believe that when one examines the relationship and discussion between the parties, it is clear that Theodore Reeder did not intend to assume any obligations, nor did Bernard Reeder obtain any "rights" other than the opportunity to occupy his brother's home for such time and under such conditions as Theodore Reeder might impose arbitrarily from day to day. It is clear, for instance, that there was no intention of any payment of rent by Bernard to Theodore, nor was Theodore precluded from occupying the house any time he might return to Omaha.

Additionally, the relationship of licensor/licensee has been thought to exist with regard to the use of land and not the occupancy of a house. See, *Matter of Daben Corp.*, 469 F. Supp. 135 (D. Puerto Rico 1979); *Moore v. Chesapeake & O. Ry. Co.*, 493 F. Supp. 1252 (S.D. W. Va. 1980), *aff'd* 649 F.2d 1004 (4th Cir. 1981); *Wenner v. Dayton-Hudson Corp.*, 123 Ariz. 203, 598 P.2d 1022 (1979); *Ulan v. Vend-A-Coin, Inc.*, 27 Ariz. App. 713, 558 P.2d 741 (1976); *Union Travel Assoc. v. International Assoc.*, 401 A.2d 105 (D.C. App. 1979).

The arrangement, for whatever difference placing

titles on it may be, was really that of a host and guest.

> The word [guest] is descriptive of a relationship known to the common understanding. Besides its somewhat narrow technical significance in statutes, it has a broad, general meaning, implying both a social relationship and the existence of a host; and has been defined in general, as meaning a person entertained in one's house or at one's table, a visitor entertained without pay; a person received and entertained at the house of another, a visitor; . . . hence a person to whom the hospitality of a home, club, etc., is extended.

39 C.J.S. *Guest* at 447 (1976). In *Stadelmann v. Glen Falls Ins. Co.*, 5 Mich. App. 536, 147 N.W.2d 460 (1967), the Michigan court said a guest is a person who is received at one's home.

The reason that we make this distinction is not to simply find our own "pigeonhole" in which to force the answer. Rather, it is to clarify the question presented by this case. This question is not whether the relationship between the brothers was that of landlord/tenant or licensor/licensee, but whether the carrier, by seeking to recover from Theodore Reeder's "guest," is, in effect, seeking to recover from the insured himself for the very risk that the carrier insured and for which it received premiums.

We should note that the question presented to us is not whether a landlord may sue his tenant for negligent destruction to the landlord's property or whether a licensor may sue a licensee for negligent destruction of the licensor's property, absent agreements to the contrary. Rather, the question is whether the relationship between the host and the guest, under the facts in this case, is such that if the carrier is permitted to sue the guest under a claim of right of subrogation, in effect the carrier is recovering from the insured himself on the very risk which the insurer agreed to take upon payment of

the premium. Therefore, in this case, the issue is not whether, absent insurance, Theodore Reeder could sue his brother or his niece, but whether the relationship between the insured and his brother was such, however characterized, that by permitting the carrier to sue the brother, in effect the carrier is suing the insured. This we believe the carrier may not do.

In *Cagle, Inc. v. Sammons*, 198 Neb. 595, 602, 254 N.W.2d 398, 403 (1977), we noted:

> The doctrine of subrogation is not administered by courts of equity as a legal right, but the principle is applied to subserve the ends of justice and to do equity in the particular case under consideration. . . . The facts and circumstances of each case determine whether the doctrine is applicable.

While it is true that the right of an insurance company to recover against a wrongdoer whose negligence has subjected the insurance company to a liability, whether the company's right be based on an equitable subrogation or an express assignment is traced through the insured, see *Omaha & R. V. R. Co. v. Granite State Fire Ins. Co.*, 53 Neb. 514, 73 N.W. 950 (1898), it is also true that an insurer cannot recover against its own insured, see *Midwest Lumber Co. v. Dwight E. Nelson Constr. Co.*, 188 Neb. 308, 196 N.W.2d 377 (1972).

In *Stetina v. State Farm Mut. Auto. Ins. Co.*, 196 Neb. 441, 451, 243 N.W.2d 341, 346 (1976), we said:

> "No right of subrogation can arise in favor of an insurer against its own insured since, by definition, subrogation exists only with respect to rights of the insurer against third persons *to whom the insurer owes no duty.* 16 Couch on Insurance 2d, § 61:133; see also 46 C.J.S. Insurance § 1209(b); 16 Couch on Insurance 2d, § 61:136. This principle is succinctly stated in *Chenoweth Motor Co. v. Cotton*, 2 Ohio Misc. 123, 207 N.E.2d 412, 413:

" '* * * it is axiomatic that [an insurance company] has no subrogation rights against the negligence of its own insured.' (Bracketed material paraphrased.)

"To allow subrogation under such circumstances would permit an insurer, in effect, to pass the incidence of the loss, either partially or totally, from itself to its own insured and thus avoid the coverage which its insured purchased. . . ."

(Emphasis supplied.) In *Alaska Ins. Co. v. RCA Alaska Commun.*, 623 P.2d 1216, 1218 (Alaska 1981), the court said:

Absent an express provision in the lease establishing the tenant's liability for loss from negligently started fires, the trend has been to find that the insurance obtained was for the mutual benefit of both parties, and that the tenant "stands in the shoes of the insured landlord for the limited purpose of defeating a subrogation claim." *Rizzuto v. Morris*, 22 Wash.App. 951, 592 P.2d 688, 690 (1979), *citing Rock Springs Realty, Inc. v. Waid*, 392 S.W.2d 270, 278 (Mo.1965); *Monterey Corp. v. Hart*, 216 Va. 843, 224 S.E.2d 142, 146 (1976).

See, also, *West American Ins Co v Pic Way*, 110 Mich. App. 684, 313 N.W.2d 187 (1981); *Gift Box v. Scott*, 272 Ark. 256, 613 S.W.2d 395 (1981); *Liberty Mut. Fire Ins. Co. v. Auto Spring Supply Co.*, 59 Cal. App. 3d 860, 131 Cal. Rptr. 211 (1976). The undisputed evidence is that Theodore Reeder testified that he told his brother, Bernard, that he would "leave my insurance policy that I had on it on it while he was in there." It is difficult to see how the insurance was not for the benefit of the Bernard Reeders to the same extent as it was for the Theodore Reeders.

In the case of *Rizzuto v. Morris*, 22 Wash. App. 951, 955-56, 592 P.2d 688, 690 (1979), the Washington Court of Appeals reasoned:

[I]nsurance companies expect to pay their insureds for negligently caused fire, and they adjust their rates accordingly. In this context, an insurer should not be allowed to treat a tenant, who is in privity with the insured landlord, as a negligent third party when it could not collect against its own insured had the insured negligently caused the fire. In effect, a tenant stands in the shoes of the insured landlord for the limited purpose of defeating a subrogation claim.

It occurs to us that if the reasoning underlying the denial of a subrogation claim applies between a landlord and a tenant, then we conclude that this reason is even more compelling when the relationship is that of host and guest, particularly when the host has assured the guest that there is insurance coverage. It may be presumed that the insured bought this policy so that he would not have to look to his guest for payment in the event of damage caused by the negligent act of the guest. We are persuaded that the relationship which existed between the brothers in this case was such that, regardless of how their relationship is characterized, a right of subrogation in the insurer against the insured's niece should not lie as a matter of law.

Having therefore concluded as a matter of law that the carrier was not entitled to maintain the right of subrogation, and, further, in view of the fact that there is no dispute as to the facts, this was a case in which there existed no genuine issue as to any material fact, the ultimate inferences to be drawn from those facts were clear, and the moving party was entitled to judgment as a matter of law. Under such circumstances the court was obligated to enter summary judgment. See *Interholzinger v. Estate of Dent*, 214 Neb. 264, 333 N.W.2d 895 (1983). The judgment of the trial court granting summary judgment in favor of the appellee and against the appellant was correct, and the judgment is affirmed.

AFFIRMED.