251 N.J. Super. 283 (1990)
598 A.2d 19
JOSEPH ZOPPI AND ADELINE ZOPPI, PLAINTIFFS,
v.
IRWIN TRAURIG AND BEATRICE MUSKAT AND YEE FO ENG AND YOON YAM ENG, HIS WIFE, DEFENDANTS. YEE FO ENG AND YOON YAM ENG, HIS WIFE, PLAINTIFFS,
v.
IRWIN TRAURIG, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided October 5, 1990.
*284 Susan Bielanowski for Joseph Zoppi and Adeline Zoppi (Gannon & Schwartz, attorneys).
Allan Maitlin for Yee Fo Eng and Yoon Yam Eng (Feuerstein, Sachs, Maitlin & Fleming, attorneys).
Richard D. Bennett for Irwin Traurig and Beatrice Muskat (Bennett & Bennett, attorneys).

OPINION
FAST, J.S.C.
Yee Fo Eng and Yoon Yam Eng (hereafter "Eng") were tenants in a commercial complex. Joseph Zoppi and Adeline Zoppi (hereafter "Zoppi") were tenants in another unit in the same complex. Irwin Traurig and Beatrice Muskat (hereafter "Traurig") were the owners of the complex. On March 19, 1987 there was a fire that started in the Eng premises. Eng filed suit against Traurig for damage to their equipment and contents, alleging that the fire was due to the negligence of Traurig. Traurig counterclaimed against Eng, alleging that the fire was the result of the negligence and/or carelessness of Eng. Traurig's counterclaim is by way of subrogation. Zoppi also commenced an action against both Eng and Traurig. Traurig and Eng cross-claimed against each other in the Zoppi action. The two actions were consolidated.
*285 During the pendency of the above referenced actions, Traurig's insurance company settled the Eng claim by payment of $29,500. and obtained a form of General Release dated May 15, 1990 reciting, inter alia, the release of "any and all claims arising out of a fire ... Settlement Amount: $29,500." That General Release was signed by both Engs. There does not appear to be a stipulation of dismissal of the action.
Based upon the settlement of the Engs' affirmative claim, Eng filed a motion for summary judgment on the grounds that defendant, having settled with plaintiffs, cannot "turn around" and sue plaintiffs with whom Traurig has settled. Likewise, Eng claims that the landlords' insurance company has no right of subrogation against them, as tenants. This opinion addresses the issues of estoppel by payment and the bar of the right of subrogation.

I.

THE MOTION BASED ON ESTOPPEL BY PAYMENT
Movant relies heavily on Kelleher v. Lozzi, 7 N.J. 17, 80 A.2d 196 (1951). In that case the court held that plaintiff was estopped from pursuing a claim against defendant inasmuch as plaintiff's insurer had paid defendant and that:
"It is logically and factually impossible to reconcile a valid claim by Kelleher with a valid claim by Lozzi. As Kelleher by her act acknowledged a valid claim by Lozzi and effected a settlement on that basis, we are brought to the conclusion that she estopped herself from taking the opposite position; that consequently she, in her own suit, has failed to state a claim upon which relief can be granted...." Kelleher, Id. at 24-25, 80 A.2d 196.
The Court said at page 26, 80 A.2d 196:
"... in the instant case it was the defendant who, in paying damages, admitted that she was the one who was at fault. No judgment was actually entered, but the parties really made their own adjudication."
In the instant case, correspondence by Traurig's attorney in initiating the settlement recited, inter alia, "This offer of settlement is again not an admission or acceptance of liability by my client, but made in a spirit for the purpose of amicably *286 adjusting matters ..." Kelleher differs in two respects. One is the unsubstantial difference that in the instant case the subrogation claim is being pursued by way of counterclaim whereas Kelleher was on a subsequent action after the first was dismissed. The other difference is very substantial in that the payment made here was expressly recited to have been without an admission of fault. The decision in Kelleher rests on the premise of an admission of fault through payment [which was made without reservation of the issue of fault.]
Because there was no admission of fault here, Kelleher is not controlling in this case. Were it otherwise, I find that settlement of a claim, as distinguished from dismissal of an entire action, would have a stifling effect on settlements, contrary to the high public policy of encouraging settlements. Jannarone v. W.T. Co., 65 N.J. Super. 472, 168 A.2d 72 (App. Div. 1961). If there is any reason why Eng would want to avoid the contract of settlement of their claim, already executed by payment having been made, of course Eng would have to restore the subrogee to the status quo ante and show an equitable basis for the rescission. Rescission, however, has not been sought by Eng.
At the very least on this motion for summary judgment, a substantial question of fact exists; to wit, what was the contemplation of the parties in making the settlement that was made.

II.

THE MOTION BASED ON THE LACK OF A RIGHT OF SUBROGATION
Eng relied on Foster Estates, Inc. v. Wolek, 105 N.J. Super. 339, 252 A.2d 219 (App.Div. 1969). That also was a fire insurance subrogation case where the tenant was obligated under a written lease to have the premises insured against loss for *287 damage by fire, which the tenant did, naming the landlord as the insured. That case held that:
"... the provisions of the lease support the conclusion that it was the intention of the parties that there be no liability upon the tenant for fire damage even if negligently caused, if the tenant provided insurance."
That written lease also provided for a "net, net" return, i.e., rent, to the landlord. Because there is no written lease in this case and specifically no obligation for the tenant to provide insurance, the finding with reference to "the intention of the parties" in Foster Estates has no factual basis in this case. At the very best, Engs' reliance on Foster Estates would have the issue become a matter of intention, which I hold cannot be determined on a motion for summary judgment where the tenancy is by virtue of an oral agreement. However, more telling is the statement in Foster Estates at page 342, 252 A.2d 219:
"Had the lease not provided for insurance, Foster might have looked to Wolek for reimbursement for the fire damage ..."
To put the Foster statement in the context of the facts here, Eng, not having provided the insurance, Traurig might look to Eng for reimbursement for the fire damage.
Engs rely on Wausau Underwriters Insurance Company vs. Crook, 183 Mich. App. 462, 455 N.W.2d 309 (Mich. App. 1989), to suggest that their payment of rent was the equivalent of their obtaining insurance under a written lease. In Wausau the Michigan Court of Appeals stated that:
"... It is undisputed that defendant or his wife paid plaintiff's subrogor for lodging. The defendant might reasonably expect that the payment would be used to cover the innkeeper's expenses of maintaining the facilities, including fire insurance, as there was no `express and unequivocal agreement to the contrary'".
The defendant in that case was a guest at a hotel. I am not bound by that out-of-state citation and am less persuaded by the rationale that payment of a hotel's charges prohibited subrogation because the tenant "might reasonably expect" the hotel to buy insurance to cover that loss. In my opinion, the hotel and/or its insurance carrier could more reasonably have expected the defendant to have been responsible for the consequences *288 of his own negligence, a substantial common law predicate.
More apropos, though, is that subrogation is the transfer of the insured's rights to the insurer, consistent with equitable concepts and subject to contract. Culver v. Ins. Co. of North Amer. 221 N.J. Super. 493, 535 A.2d 15 (App.Div. 1987) rev'd 115 N.J. 451, 559 A.2d 400 (1989). I find no binding case law or reason in common sense that would hold that where the landlord would have had a claim against a tenant, the existence of insurance obtained by landlord, paid for by landlord from landlord's own unrestricted funds, and for the benefit of the landlord should exculpate the tenant from the consequence of negligent conduct  absent an express agreement to that effect. I find that proposition to fly in the face of common sense and the public policy of holding one responsible for the consequence of one's own negligence. The contrary inference is that in all landlord-tenant relationships no express waiver of the right of subrogation would be needed because it will be implied as a matter of law. I do not believe that to be the law in New Jersey. The cases cited by movant where there were written leases are not applicable to the facts of this case.
Subrogation is an equitable remedy based on the common law concept that the burden for the ultimate discharge of an obligation ought to rest on the one who in good conscience ought to pay it. Culver, supra, 221 N.J. Super. 493, 500, 535 A.2d 15. The Supreme Court did not in any way weaken the equitable concept of subrogation as discussed by Judge Pressler, but reversed the Appellate Division on the facts of that case, to wit, that the general and equitable subrogation principles were avoided by the expressed agreement of the parties. Culver, supra, 115 N.J. 451, 459, 559 A.2d 400. In fact Culver dealt not with a denial of the right of subrogation; rather it dealt with distribution of the proceeds of subrogation.

*289 CONCLUSION
For the foregoing reasons, the motion for summary judgment by Eng against Traurig's insurance company is denied, and the defendants' insurance company may continue the prosecution of the counterclaim and crossclaim (in the Zoppi action) in the name of its subrogor.