TRI-PAR INVESTMENTS, L.L.C., APPELLANT, V.
COLETTE LYNN SOUSA, FORMERLY KNOWN AS
COLETTE LYNN WOODS, APPELLEE.
680 N.W.2d 190

Filed June 4, 2004.   No. S-03-028.

■■■■■■■■

■■■■■■■■

Thomas A. Grennan and Donald P. Dworak, of Gross & Welch, P.C., for appellant.

Betty L. Egan and Mark A. Weber, of Walentine, O'Toole, McQuillan & Gordon, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

Tri-Par Investments, L.L.C. (Tri-Par), sued Colette Lynn Sousa, formerly known as Colette Lynn Woods, for negligence and breach of their lease agreement after a house Sousa rented from Tri-Par was damaged by fire. On appeal, we must determine whether the district court erred in concluding that Sousa and Tri-Par were coinsured under Tri-Par's insurance policy and that therefore, Tri-Par's insurer could not maintain a subrogation action against Sousa.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 17, 1996, a fire damaged the house Sousa was renting from Tri-Par. At the time of the fire, Tri-Par maintained a homeowner's policy of insurance on the house through its insurer, Auto-Owners Insurance (Auto-Owners). After Tri-Par made a claim for coverage, Auto-Owners paid Tri-Par for most of the damage done to the home. Shortly thereafter, Auto-Owners initiated a subrogation action in the name of Tri-Par against Sousa. Tri-Par sought $54,020 in relief for the fire damage and loss of rent based on two theories of recovery: (1) negligence and (2) breach of the lease agreement.

In its petition, Tri-Par alleged that Sousa's negligence caused the fire. Specifically, Tri-Par alleged that Sousa was negligent in failing to (1) properly and adequately supervise the minor children; (2) keep one of the minor children from playing with

or otherwise using matches or a lighter; and (3) keep matches, lighters, and other ignition sources in a secure place which would be inaccessible to the minor children. Tri-Par also alleged that Sousa breached the lease agreement by failing to (1) pay for or repair the damage done to the premises and (2) take care of the buildings and premises and keep them safe from danger of fire.

Both parties filed motions for summary judgment. On June 30, 2000, the district court determined that for subrogation purposes, Sousa and Tri-Par were coinsured under Tri-Par's homeowner's policy. Therefore, because an insurer has no subrogation rights against its own insured, the court granted Sousa's motion for summary judgment to the extent that Tri-Par's case was one of subrogation. To the extent Tri-Par asserted a claim for damages outside of its subrogated interests, the court overruled Sousa's motion for summary judgment. Tri-Par's motion for summary judgment was overruled.

Tri-Par appealed the order, and the Nebraska Court of Appeals dismissed for lack of jurisdiction because the district court's order did not adjudicate all the claims of all the parties and, therefore, was not a final, appealable order under Neb. Rev. Stat. § 25-705(6) (Supp. 1999) (now codified at Neb. Rev. Stat. § 25-1315(1) (Cum. Supp. 2002)). See *Tri-Par Investments v. Woods*, 9 Neb. App. 1iii (No. A-00-785, Sept. 1, 2000). Tri-Par then filed a motion asking the district court to enter an order of final judgment. On October 12, 2000, the district court entered an order, pursuant to § 25-705(6), granting Tri-Par's motion and incorporating its findings of June 30. Tri-Par then moved to appeal the court's order of June 30, 2000. On appeal, we determined that the district court's order of June 30 was not a final, appealable order and that the court's order of October 12 did not cure the defects of the first order because the record established the existence of a nonsubrogated interest in the case. *Tri-Par Investments v. Sousa*, 263 Neb. 209, 640 N.W.2d 371 (2002). Therefore, we dismissed Tri-Par's appeal for lack of jurisdiction. *Id.*

In order to make the district court's June 30, 2000, order a final, appealable order, Tri-Par went back to the district court and moved to withdraw the "non-subrogated interest and/or claims"

in the case. The court granted Tri-Par's motion and stated that because the entirety of the "non-subrogated interest and/or claims" in the case had been withdrawn and terminated, all of the claims, rights, and liabilities in the case had been fully and finally adjudicated. Thereafter, Tri-Par timely appealed.

We moved this case to our docket pursuant to our power to regulate the Court of Appeals' caseload and that of this court. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Tri-Par asserts, restated, that the district court erred in granting summary judgment to Sousa because (1) the court's decision is premised on the legal fiction that under a landlord-tenant relationship, the tenant is always constructively presumed to be an implied coinsured under the landlord's insurance policy, and (2) the facts preclude a finding that Sousa constitutes a coinsured under Tri-Par's insurance policy.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Misle v. HJA, Inc.*, 267 Neb. 375, 674 N.W.2d 257 (2004). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id.*

## ANALYSIS

Today, we are asked to weigh in on a dispute that has raged in subrogation jurisprudence for the last 30 years. Specifically, we are asked to decide whether, for subrogation purposes, the law presumes that a tenant is coinsured under his or her landlord's insurance policy absent an express provision in the parties' lease to the contrary. Because the right of subrogation cannot arise in

favor of an insurer against its own insured, see *Jindra v. Clayton*, 247 Neb. 597, 529 N.W.2d 523 (1995), such a presumption would bar insurers from bringing a subrogation action against tenants who cause damage to their landlords' insured premises. In the instant case, the district court, relying on our opinions in *Reeder v. Reeder*, 217 Neb. 120, 348 N.W.2d 832 (1984), and *Jindra, supra*, determined that such a presumption applied. Stated otherwise, the district court determined that because there was no express agreement to the contrary in the lease, Sousa was an implied coinsured under Tri-Par's insurance policy with Auto-Owners and that therefore, Tri-Par was prohibited from bringing a subrogation action on behalf of Auto-Owners against Sousa. We affirm.

Before delving into the substance of the appeal, we begin by setting forth some of the guiding principles of subrogation law. Generally speaking, subrogation is the substitution of one person in the place of another with reference to a lawful claim so that the one who is substituted succeeds to the rights of the other in relation to the debt or claim. *Jindra, supra*. The doctrine of subrogation is not administered by courts of equity as a legal right, but the principle is applied to subserve the ends of justice and to do equity. *Cagle, Inc. v. Sammons*, 198 Neb. 595, 254 N.W.2d 398 (1977). In the context of insurance, the right to subrogation is based on two premises: (1) A wrongdoer should reimburse an insurer for payments that the insurer has made to its insured and (2) an insured should not be allowed to recover twice from the insured's insurer and the tort-feasor. *Allstate Ins. Co. v. LaRandeau*, 261 Neb. 242, 622 N.W.2d 646 (2001).

Simply put, in the context of liability insurance, when a "liability insurer pays an insured's claim for damages caused by the . . . wrongdoing of a third party, the insurer is entitled to be subrogated to the rights of the insured against that third party." 22 Eric Mills Holmes, Holmes' Appleman on Insurance 2d § 141 at 417 (2003). An insurer, however, cannot seek to subrogate against its own insured, even if the insured was negligent in causing the loss. See, *Jindra, supra*; *Control Specialists v. State Farm Mut. Auto. Ins.*, 228 Neb. 642, 423 N.W.2d 775 (1988); *Reeder, supra*. Relying on this proposition, Sousa contends that she is an implied coinsured under Tri-Par's homeowner's policy and that

therefore, Auto-Owners cannot maintain a subrogation action against her.

Tri-Par, on the other hand, alleges that Sousa is a wrongdoer and should reimburse Auto-Owners for the payments Auto-Owners made to Tri-Par. Moreover, Tri-Par argues that the district court's decision is incorrect because it is premised on the legal fiction that under a landlord-tenant relationship, the tenant is presumed to be an implied coinsured under the landlord's insurance policy. Tri-Par contends that under Nebraska law, the availability of a subrogation claim is to be determined by examining the facts and circumstances of each case, and if there is no evidence that the landlord has agreed to maintain insurance for the benefit of the tenant, a court cannot presume that the tenant is an implied coinsured under the landlord's policy for the purpose of defeating subrogation.

As mentioned previously, the question whether the law presumes that a tenant is coinsured under his or her landlord's insurance policy for the purpose of subrogation has been heavily litigated and hotly debated. The debate began with *Sutton v. Jondahl*, 532 P.2d 478 (Okla. App. 1975), where the Oklahoma Court of Appeals held that absent an agreement to the contrary, the law presumes that a tenant is coinsured under a landlord's fire insurance policy and that therefore, a landlord's insurer cannot maintain a subrogation action against a tenant for damage to the insured property that is caused by the tenant's negligence. *Id.* Generally speaking, the *Sutton* rule is the majority position and the modern trend in the law. See, e.g., *North River Ins. Co. v. Snyder*, 804 A.2d 399 (Me. 2002); *DiLullo v. Joseph*, 259 Conn. 847, 792 A.2d 819 (2002); *Peterson v. Silva*, 428 Mass. 751, 704 N.E.2d 1163 (1999); *Community Credit Union v. Homelvig*, 487 N.W.2d 602 (N.D. 1992); *Alaska Ins. Co. v. RCA Alaska Commun.*, 623 P.2d 1216 (Alaska 1981); *GNS Partnership v. Fullmer*, 873 P.2d 1157 (Utah App. 1994); *United Fire & Cas. Co. v. Bruggeman*, 505 N.W.2d 87 (Minn. App. 1993); *Cascade Trailer Court v. Beeson*, 50 Wash. App. 678, 749 P.2d 761 (1988); *New Hampshire Ins v Labombard*, 155 Mich. App. 369, 399 N.W.2d 527 (1986). See, generally, 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 224:6 (2000).

The court in *Sutton* espoused the following rationale for its rule:

> [S]ubrogation should not be available to the insurance carrier because the law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary, comparable to the permissive-user feature of automobile insurance. This principle is derived from a recognition of a relational reality, namely, that both landlord and tenant have an insurable interest in the rented premises—the former owns the fee and the latter has a possessory interest. Here the landlords . . . purchased the fire insurance from Central Mutual Insurance Company to protect such interests in the property against loss from fire. This is not uncommon. And as a matter of sound business practice the premium paid had to be considered in establishing the rent rate on the rental unit. Such premium was chargeable against the rent as an overhead or operating expense. And of course it follows then that the tenant actually paid the premium as part of the monthly rental.
>
> The landlords of course could have held out for an agreement that the tenant would furnish fire insurance on the premises. But they did not. They elected to themselves purchase the coverage. To suggest the fire insurance does not extend to the insurable interest of an occupying tenant is to ignore the realities of urban apartment and single-family dwelling renting. Prospective tenants ordinarily rely upon the owner of the dwelling to provide fire protection for the realty (as distinguished from personal property) absent an express agreement otherwise. Certainly it would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or if there was such protection it did not inure to his benefit and that he would need to take out another fire policy to protect himself from any loss during his occupancy. Perhaps this comes about because the companies themselves have accepted coverage of a tenant as a natural thing. Otherwise their insurance salesmen would have long ago made such need a matter of common knowledge by promoting the sale to tenants of a second fire insurance policy to cover the real estate.

>Basic equity and fundamental justice upon which the equitable doctrine of subrogation is established requires that when fire insurance is provided for a dwelling it protects the insurable interests of all joint owners including the possessory interests of a tenant absent an express agreement by the latter to the contrary. The company affording such coverage should not be allowed to shift a fire loss to an occupying tenant even if the latter negligently caused it. . . . For to conclude otherwise is to shift the insurable risk assumed by the insurance company from it to the tenant—a party occupying a substantially different position from that of a fire-causing third party not in privity with the insured landlord.

(Citations omitted.) *Sutton v. Jondahl*, 532 P.2d 478, 482 (Okla. App. 1975).

Over the years, numerous courts have agreed with the rationale of *Sutton*. See, generally, *American Nat. Fire Ins. Co. v. Hughes*, 658 N.W.2d 330 (N.D. 2003) (primary rationale for concluding that landlords and tenants are coinsureds is their insurable interests in property and commercial realities under which lessors insure leased premises and pass on premium cost in rent); *Safeco Ins. Co. v. Capri*, 705 P.2d 659 (Nev. 1985) (noting insurance premium is likely passed along to tenant in form of higher rent); *Alaska Ins. Co. v. RCA Alaska Commun.*, 623 P.2d 1216 (Alaska 1981).

Moreover, other courts, while agreeing with the rule announced in *Sutton*, have expanded upon the rationale for the rule. For example, the Connecticut Supreme Court based its support of *Sutton* on its public policy of disfavoring economic waste. See *DiLullo v. Joseph*, 259 Conn. 847, 792 A.2d 819 (2002). The court stated that a rule which allocated to the tenant the responsibility of maintaining sufficient insurance to cover a claim for subrogation by the landlord's insurer would create a strong incentive for tenants to carry liability insurance for the value or replacement cost of the entire building, irrespective of the portion of the building they occupied. *Id.* Such insurance would duplicate that taken out by the landlord under the landlord's insurance policy. "Thus, although the two forms of insurance would be different, the economic interest insured would be the same," and economic waste would ensue. *Id.* at 854, 792 A.2d at 823. See, also, *North River*

*Ins. Co. v. Snyder*, 804 A.2d 399 (Me. 2002); *Peterson v. Silva*, 428 Mass. 751, 754, 704 N.E.2d 1163, 1166 (1999) ("[i]t surely is not in the public interest to require all the tenants to insure the building which they share, thus causing the building to be fully insured by each tenancy"); *United Fire & Cas. Co. v. Bruggeman*, 505 N.W.2d 87 (Minn. App. 1993).

In siding with *Sutton*, courts also point to the reasonable expectations of the tenant.

> We are persuaded that a tenant may reasonably expect that his or her rental payments will be used to cover the lessor's ordinary and necessary expenses, including fire insurance premiums. Tenants reasonably expect that, by effectively contributing to the premium payments, they will occupy a position akin to the insured and will be free from tort liability for negligently caused fire damage to the premises.

*New Hampshire Ins v Labombard*, 155 Mich. App. 369, 376-77, 399 N.W.2d 527, 531 (1986). See, also, *Bruggeman, supra*; *Cascade Trailer Court v. Beeson*, 50 Wash. App. 678, 749 P.2d 761 (1988). Lastly, courts have noted that insurers understand the risk associated with insuring rental property and have undoubtedly adjusted their rates to reflect the increased risk. See, *GNS Partnership v. Fullmer*, 873 P.2d 1157 (Utah App. 1994); *Bruggeman, supra*.

A number of courts, however, have rejected the *Sutton* rule, positing several reasons for doing so. For example, the Arkansas Supreme Court stated that *Sutton* is premised on a legal fiction.

> The fiction that by paying the rent, the lessee paid the insurance premium is not appropriate. There is no evidence that appellee paid any greater rent because of the insurance than he would have paid had appellant not taken insurance. If the tenant paid the insurance premium, he also paid the taxes on the property and the cost of construction or purchase of the house, not to mention cost of repairs and maintenance. Such a fiction ignores the fact that more often than not the market, i.e., supply and demand, is the controlling factor in fixing and negotiating rents.

*Page v. Scott*, 263 Ark. 684, 687-88, 567 S.W.2d 101, 103-04 (1978). See, also, *Neubauer v. Hostetter*, 485 N.W.2d 87 (Iowa

1992); *Zoppi v. Traurig*, 251 N.J. Super. 283, 598 A.2d 19 (1990). Similarly, the Iowa Supreme Court stated that *Sutton v. Jondahl*, 532 P.2d 478 (Okla. App. 1975), disregards the fact that landlords and tenants have different interests in a dwelling and that these "separate estates [are] capable of being separately valued and separately insured." *Neubauer*, 485 N.W.2d at 90.

The *Sutton* rule has also been criticized for encroaching upon the contractual relationship between a landlord and its insurer. See *56 Associates ex rel. Paolino v. Frieband*, 89 F. Supp. 2d 189 (D.R.I. 2000). It has also been suggested that the common-law rule which requires that the burden of the loss be placed on the negligent party should weigh heavily against barring subrogation by the landlord's insurer. See *Regent Ins. Co. v. Economy Preferred Ins. Co.*, 749 F. Supp. 191 (C.D. Ill. 1990).

Of the courts that have rejected *Sutton,* a number hold to an opposite rule, i.e., that a landlord's insurer is allowed to bring a subrogation action against a tenant absent an express agreement in the lease to the contrary. See, e.g., *Regent Ins. Co., supra*; *Neubauer, supra*; *Britton v. Wooten*, 817 S.W.2d 443 (Ky. 1991); *Page, supra*; *Zoppi, supra*. A greater number, however, reject the aforementioned categorical rule and favor a case-by-case approach. These courts hold that a trier of fact must focus on the terms of the lease agreement itself to determine what the reasonable expectations of the parties were as to who should bear the risk of loss for damage to the leased premises caused by the tenant's negligence. See, generally, *56 Associates ex rel. Paolino, supra*; *Union Mut. Fire Ins. Co. v. Joerg*, 824 A.2d 586 (Vt. 2003); *Bannock Bldg. Co. v. Sahlberg*, 126 Idaho 545, 887 P.2d 1052 (1994); *Dix Mutual Ins. Co. v. LaFramboise*, 149 Ill. 2d 314, 597 N.E.2d 622, 173 Ill. Dec. 648 (1992); *Fire Ins. Exchange v. Hammond*, 83 Cal. App. 4th 313, 99 Cal. Rptr. 2d 596 (2000). For example, in *Sahlberg*, the Idaho Supreme Court asserted that the *Sutton* approach painted with too broad of a stroke and that the proper analysis should "look to the land-lord's and tenant's intentions as shown by that particular lease agreement and the facts and surrounding circumstances to determine whether the risk of loss for damage by fire should fall on the landlord or the tenant." *Sahlberg*, 126 Idaho at 548, 887 P.2d at 1055.

In the instant case, Tri-Par asks us to adopt the case-by-case approach epitomized by *56 Associates ex rel. Paolino* and *Sahlberg*. Sousa, on the other hand, asks us to adopt the per se approach announced in *Sutton*. Because we believe *Sutton* and its progeny are in line with our prior cases and represent the better rule, we explicitly adopt that rule for Nebraska.

Although we have not had occasion to formally adopt the *Sutton* rule before today, we have implicitly done so in two of our past decisions discussing different, but highly related, factual circumstances. In *Reeder v. Reeder*, 217 Neb. 120, 348 N.W.2d 832 (1984), the guest of an insured homeowner negligently caused fire damage to his host's home. After paying the insured homeowner for the damage, the insurer sought to subrogate against the guest. On appeal, we began by noting the rule that an insurer cannot recover against its own insured. *Id.* We then went on to compare the host-guest relationship to a landlord-tenant relationship, noting:

> "Absent an express provision in the lease establishing the tenant's liability for loss from negligently started fires, the trend has been to find that the insurance obtained was for the mutual benefit of both parties, and that the tenant 'stands in the shoes of the insured landlord for the limited purpose of defeating a subrogation claim.' . . ."

*Id.* at 128, 348 N.W.2d at 836, quoting *Alaska Ins. Co. v. RCA Alaska Commun.*, 623 P.2d 1216 (Alaska 1981). We then stated the rationale behind the modern trend:

> "[I]nsurance companies expect to pay their insureds for negligently caused fire, and they adjust their rates accordingly. In this context, an insurer should not be allowed to treat a tenant, who is in privity with the insured landlord, as a negligent third party when it could not collect against its own insured had the insured negligently caused the fire. In effect, a tenant stands in the shoes of the insured landlord for the limited purpose of defeating a subrogation claim."

*Reeder*, 217 Neb. at 129, 348 N.W.2d at 837, quoting *Rizzuto v. Morris*, 22 Wash. App. 951, 592 P.2d 688 (1979). Concluding that the reasoning underlying the denial of a subrogation claim between a landlord and a tenant was even more compelling when the relationship was between a host and a guest, we determined

that a guest who negligently caused damage to his host's home could not be sued by the owner's insurance carrier under a right of subrogation as a matter of law. *Reeder, supra.*

Expanding on *Reeder*, in *Jindra v. Clayton*, 247 Neb. 597, 529 N.W.2d 523 (1995), we determined that joint tenants with a close family relationship were coinsureds under a policy of insurance held by one joint tenant and that therefore, the insurer could not seek to subrogate against the uninsured joint tenant who negligently caused extensive damage to the jointly held property. In reaching this conclusion, we noted that the "modern trend is that a lessor's insurer cannot maintain a subrogation action against a lessee in the absence of an express agreement or lease provision." *Id.* at 604, 529 N.W.2d at 527. Moreover, echoing the policy rationale espoused in *Sutton v. Jondahl*, 532 P.2d 478 (Okla. App. 1975), we stated that landlords and tenants are coinsureds for subrogation purposes

> "because of the reasonable expectations they derive from their privity under the lease, their insurable interests in the property, and the commercial realities under which lessors insure leased premises and pass on the premium cost in rent and under which insurers make reimbursement for fires negligently caused by their insureds' negligence."

*Jindra*, 247 Neb. at 604, 529 N.W.2d at 527. Accord 6A John Alan Appleman & Jean Appleman, Insurance Law and Practice § 4055 (Supp. 2004).

In sum, although neither case turned on the relationship between a landlord and his or her tenant, both decisions were premised on our assumptions that (1) landlords and tenants are considered coinsureds for subrogation purposes and (2) a landlord's insurer cannot maintain a subrogation action against a tenant in the absence of an express provision in the lease agreement. Thus, principled adherence to *Reeder v. Reeder*, 217 Neb. 120, 348 N.W.2d 832 (1984), and *Jindra, supra*, compels us to formally recognize that *Sutton* and its progeny represent the law of Nebraska, i.e., that landlords and tenants are implied coinsureds for subrogation purposes and that a landlord's insurer cannot maintain a subrogation action against a tenant in the absence of an express lease agreement to the contrary.

Moreover, even if we had reason to answer the issue anew, we would adopt the *Sutton* rule because it represents the better public policy. As an initial matter, a pure *Sutton* approach has the benefit of providing legal certainty. For example, the *Sutton* rule prevents landlords from engaging in gamesmanship when drafting leases by providing the necessary incentive for them, if they so desire, to place express subrogation provisions in their leases. If such a provision is placed in their lease, tenants will be on notice that they need to purchase liability insurance. If such a provision is not included in their lease, insurers will pass the increased risk along to landlords in the form of higher premiums, and landlords, in turn, will pass along the higher premiums to tenants in the form of increased rent. As the court in *Sutton* did 30 years ago, we acknowledge that this is almost certainly the current commercial reality.

■ In addition, we continue to believe that absent an express agreement alerting them otherwise, the *Sutton* rule comports with the reasonable expectations of tenants. Moreover, the *Sutton* rule accounts for modern commercial realities by preventing the economic waste that will undoubtedly occur if each tenant in a multiunit dwelling or multiunit rental complex is required to insure the entire building against his or her own negligence. In sum, *Sutton* and its progeny represent the better reasoned rule. Therefore, we hold that absent an express agreement to the contrary in a lease, a tenant and his or her landlord are implied coinsureds under the landlord's fire insurance policy, and the landlord's liability insurer is precluded from bringing a subrogation action against the negligent tenant.

In the instant case, although the lease required Sousa to (1) repair all damages done to the premises or pay for the same, (2) keep the building free from danger of fire, and (3) return the property in as good of condition as it was received, there is no express provision in the lease that provides for the right of subrogation on behalf of Tri-Par's insurer. Therefore, for subrogation purposes, Sousa and Tri-Par are implied coinsureds and Tri-Par cannot maintain this subrogation action on behalf of Auto-Owners against Sousa.

## CONCLUSION

For the foregoing reasons, Tri-Par is precluded, as a matter of law, from bringing a subrogation action on behalf of Auto-Owners against Sousa. The district court's order granting summary judgment in favor of Sousa and against Tri-Par was correct and is hereby affirmed.

AFFIRMED.