GNS PARTNERSHIP: Bryson Garbett, Jan Garbett, David Nipper, Betty Nipper, White Water Corporation, and Brian Stephensen, Plaintiffs and Appellants,

v.

**Brad FULLMER, Defendant and Appellee.**

No. 920763–CA.

Court of Appeals of Utah.

April 18, 1994.

---

Stuart H. Schultz (Argued), H. Burt Ringwood, Strong & Hanni, Salt Lake City, for appellants.

Keith W. Meade (Argued), Cohne, Rappaport & Segal, Salt Lake City, for appellee.

Before BENCH, BILLINGS and GREENWOOD, JJ.

OPINION

BILLINGS, Presiding Judge:

Plaintiff GNS Partnership, as landlord, appeals from an adverse summary judgment in

a subrogation claim, denying recovery for property damage negligently caused by defendant Brad Fullmer, a GNS tenant. We affirm.

## FACTS

Fullmer, a student at Dixie College, was a tenant in apartment A6 of The Wedge Apartments for winter and spring quarters of the 1987–88 school year. GNS Partnership owns The Wedge Apartments. Pursuant to a written lease, Fullmer paid $335 per quarter in rent. The rental agreement between the parties is silent on the issues of liability for fire damage and responsibility for fire insurance, and the parties never discussed these issues.

On February 22, 1988, shortly after he became a tenant at The Wedge Apartments, Fullmer used a Hibachi grill for a noon barbecue on the balcony of his apartment and left the coals in the Hibachi. At about 7:00 that evening, Fullmer prepared the same Hibachi for another barbecue. In the process, Fullmer disposed of the coals remaining in the Hibachi from the noon barbecue by dumping them in a cardboard box located in a storage closet. A fire broke out in the storage area of apartment A6 at approximately 1:00 a.m. on February 23, 1988, damaging The Wedge Apartments. The trial court found the fire was started by the smoldering coals Fullmer negligently placed in his storage closet.

GNS insured the apartments with State Farm Fire & Casualty Company. State Farm paid GNS over $70,000 for the fire loss it suffered and then filed this subrogation action in the name of its insured. The subject insurance policy does not include tenants as named or defined insureds.

The case came before the district court on cross motions for summary judgment. The contested legal issue was whether a subrogation claim could be maintained against Fullmer, a tenant of the insured. GNS argued it was entitled to summary judgment because it was undisputed that Fullmer negligently caused the property damage. For purposes

of the cross motions for summary judgment, Fullmer admitted his negligence caused the fire, but contended that State Farm could not pursue a subrogation claim against him because he was a coinsured under the fire insurance policy issued by State Farm. The trial court concluded that State Farm was barred from maintaining a subrogation action against Fullmer and granted Fullmer's motion for summary judgment.

During the course of the proceedings, two affidavits were filed with the trial court. First, Fullmer submitted an affidavit supporting his memorandum in opposition to GNS's motion for partial summary judgment that set out his expectations of insurance coverage. GNS objected to Fullmer's affidavit, claiming it failed to meet the standard set forth in Rule 56(e) of the Utah Rules of Civil Procedure. The court overruled GNS's objection to Fullmer's affidavit and received it, observing that Fullmer's affidavit "had no bearing on the court's ultimate ruling." Second, GNS filed the affidavit of David Houston, a claim superintendent for State Farm, regarding homeowner's and renter's insurance policies. Fullmer made a motion to strike the Houston affidavit. The trial court struck paragraphs 5 and 6 of the affidavit, concluding they were not based on personal knowledge.

GNS appeals, arguing that the trial court erred in: (1) granting summary judgment for Fullmer and dismissing its subrogation claim; (2) striking paragraphs 5 and 6 of the Houston affidavit[1] and receiving portions of paragraphs 3 and 5 of Fullmer's affidavit. Accordingly, GNS urges us to reverse the grant of summary judgment for Fullmer and enter partial summary judgment in its favor.

## I. SUBROGATION

"On review of a grant of summary judgment, 'we view the facts, and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.'" *Cannon v. University of Utah*, 866 P.2d 586, 587 (Utah App.1993) (quoting *Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993)).

---

1. As stated in its brief, GNS raises this argument simply to preserve its rights in the event we

determine that an affidavit regarding the availability of renter's insurance is necessary.

A grant of summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Smith v. Batchelor*, 832 P.2d 467, 470 (Utah 1992). Because summary judgment is granted as a matter of law, we review the trial court's legal conclusions for correctness, according them no deference. *Society of Separationists, Inc. v. Whitehead*, 870 P.2d 916 (Utah 1993).

■ The doctrine of subrogation allows an insurer, "having paid a loss resulting from a peril insured against, to step into the shoes of its insured and recoup its losses from a tort-feasor whose negligence caused the loss." *Board of Educ. v. Hales*, 566 P.2d 1246, 1247 (Utah 1977); *accord Fashion Place Inv., Ltd. v. Salt Lake County*, 776 P.2d 941, 944 (Utah App.), *cert. denied*, 783 P.2d 53 (Utah 1989). Subrogation is an equitable doctrine, *Fashion Place*, 776 P.2d at 944, hence, equitable principles apply in determining its availability. *Alaska Ins. Co. v. RCA Alaska Communications*, 623 P.2d 1216, 1217 (Alaska 1981). However, it is well established that "an insurer may not recover against its own insured, or a coinsured under the policy." *Board of Educ.*, 566 P.2d at 1247.

GNS contends that the trial court erroneously interpreted *Fashion Place* as conferring upon Fullmer implied coinsured status under GNS's fire insurance policy when the parties' lease was silent regarding the obligation to maintain insurance. Thus, we begin our analysis with a thorough review of *Fashion Place* to see whether, as the trial court concluded, it mandates dismissal of GNS's subrogation claim against Fullmer because he is a coinsured.

In *Fashion Place*, the landlord's insurer sought subrogation against a tenant for damages resulting from a fire that destroyed the leased premises because of the tenant's negligence. *Fashion Place*, 776 P.2d at 943. The trial court entered summary judgment in favor of the tenant, after determining from affidavits and depositions that the parties did not expressly intend to overcome the presumption that the tenant was a coinsured. *Id.* Affirming on appeal, this court held that

the tenant was an implied coinsured under the terms of the lease, in which the landlord agreed to provide fire insurance. Thus, the landlord's insurer could not seek subrogation against the coinsured tenant. *Id.* at 945.

In so deciding, the *Fashion Place* court first addressed the threshold question of whether the lease was ambiguous. The lease negotiated by the parties contained two seemingly inconsistent provisions: (1) the tenant would deliver the premises to the landlord in as good a condition as when the tenant entered with damage by *fire not the fault of the tenant excepted;* and, (2) the landlord was responsible for fire insurance on the building. *Id.* at 943. The court reconciled these provisions, stating that the parties agreed that "the tenant bears the loss for damage resulting from fires which are its fault," but that "the parties agree[d] to relieve the tenant from the practical risk posed by that legal responsibility through the device of fire insurance provided by the landlord." *Id.* at 944.

The *Fashion Place* court next examined whether the landlord's insurer nevertheless had a right of subrogation against the negligent tenant. As required by the lease, the landlord provided fire insurance on the building; however, the landlord did not include the tenant as an insured. In concluding that the tenant was nevertheless a coinsured of the landlord, and thus that there was no right of subrogation, the court stated:

"An insurer which accepts a premium based partially on the inclusion of a coinsured under a policy of insurance has assumed the risk of [the coinsured's] negligence." *Where the insured is required by contract or lease to carry insurance for the benefit of another, the other party may attain the status of a defacto [sic] coinsured even if not named as an insured in the policy obtained. In the absence of a design or fraud on the part of the coinsured, no subrogation may be taken against such party.* Furthermore, an insurer-subrogee stands in the shoes of its insured and any defenses that are valid against the insured are also valid against the insurer. Therefore, if the tenant is a coinsured under the landlord's policy, the

insurer has no right of subrogation against it.

*Id.* at 944–45 (emphasis added) (citations omitted) (quoting *Board of Educ.*, 566 P.2d at 1247). The court reasoned, "When [the landlord] agreed to provide insurance for the building it assumed the risk of its coinsureds' negligence. 'The insurer, which has accepted one premium covering the entire property and has assumed the risk of the negligence of each insured party, ought not to be allowed to shift the risk to any one of them.'" *Id.* at 945 (quoting *Board of Educ.*, 566 P.2d at 1248).

After *Fashion Place*, it is clear that a tenant in Utah attains the status of a de facto coinsured, even if not named as an insured, if the landlord is required by contract to carry insurance. However, the critical distinction between *Fashion Place* and the case at hand is that in *Fashion Place*, the landlord agreed to insure the premises in the rental agreement, while the rental agreement in the present case is silent regarding liability for fires negligently started by a tenant and responsibility for insurance maintenance.

■ Consequently, our case is not directly controlled by *Fashion Place*. Whether a tenant is presumed to be a coinsured when there is no written or oral agreement between the parties regarding liability for negligence and/or responsibility for fire insurance coverage is an issue of first impression in Utah. *Fashion Place* simply takes the first step in resolving this question. We take the next step today.

There is a split of authority among the jurisdictions that have considered this issue. The majority hold the landlord's insurance is presumed to be held for the tenant's benefit as a coinsured in the absence of an express agreement to the contrary. Conversely, the minority hold the tenant liable in a subrogation action, absent an express agreement to the contrary. We find the majority view to be the more persuasive.

The first and leading case to state the majority position, upon which this court re-

lied in *Fashion Place*, is *Sutton v. Jondahl*, 532 P.2d 478 (Okla.Ct.App.1975). In *Sutton*, as in the case at hand, the landlord's fire insurance carrier sued the tenant, claiming subrogation rights for amounts paid for damage to a rented home from a fire negligently caused by the tenant's son.[2] Holding that the insurer had no subrogation rights against the tenant, the court held that the law considers a tenant a coinsured of the landlord absent an express agreement between them to the contrary. *Id.* at 482. The court reasoned:

Under the facts and circumstances in this record the subrogation should not be available to the insurance carrier because *the law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary,* comparable to the permissive-user feature of automobile insurance. This principle is derived from a recognition of a relational reality, namely, that both landlord and tenant have an insurable interest in the rented premises—the former owns the fee and the latter has a possessory interest. Here the landlords (Suttons) purchased the fire insurance from Central Mutual Insurance Company to protect such interests in the property against loss from fire. This is not uncommon. And as a matter of sound business practice the premium paid had to be considered in establishing the rent rate on the rental unit. Such premium was chargeable against the rent as an overhead or operating expense. And of course it follows then that the tenant actually paid the premium as part of the monthly rental.

*The landlords of course could have held out for an agreement that the tenant would furnish fire insurance on the premises. But they did not. They elected to themselves purchase the coverage.* To suggest the fire insurance does not extend to the insurable interest of an occupying tenant is to ignore the realities of urban apartment and single-family dwelling renting. Prospective tenants ordinarily rely upon the owner of the dwelling to provide

2. It is not clear from the *Sutton* opinion what the terms of the rental agreement were; however, it is clear that the landlords did not obligate the

tenant to furnish fire insurance, but rather purchased it themselves. *Sutton*, 532 P.2d at 482.

fire protection for the realty (as distinguished from personal property) absent an express agreement otherwise. *Certainly it would not likely occur to a reasonably prudent tenant that the premises were without fire insurance protection or if there was such protection it did not inure to his benefit and that he would need to take out another fire policy to protect himself from a loss during his occupancy....*

Basic equity and fundamental justice upon which the equitable doctrine of subrogation is established requires [sic] that when fire insurance is provided for a dwelling it protects the insurable interests of all joint owners including the possessory interests of a tenant absent an express agreement by the latter to the contrary. The company affording such coverage should not be allowed to shift a fire loss to an occupying tenant even if the latter negligently caused it.... For to conclude otherwise is to shift the insurable risk assumed by the insurance company from it to the tenant—a party occupying a substantially different position from that of a fire-causing third party not in privity with the insured landlord.

*Id.* (emphases added) (citations omitted).

Considering the issue of whether a tenant is a coinsured when, as in the present case, there is no agreement between the parties regarding liability for negligence or maintenance of fire insurance, other courts have adopted the *Sutton* line of reasoning. For example, in *United Fire & Casualty Co. v. Bruggeman,* 505 N.W.2d 87 (Minn.Ct.App. 1993), a landlord's insurer brought a subrogation action against negligent tenants who caused fire damage. Like this case, there was nothing in a written lease between the parties and no independent discussion of insurance coverage. The *Bruggeman* court held that the tenant was a coinsured of the landlord for the limited purpose of subrogation, stating, "We believe this is the most efficient way to allocate insurance costs." *Id.* at 89. Making each tenant responsible for his or her own fire insurance "would be contrary to economic logic and common

sense," because "the same property would be insured many times over." *Id.* Further:

The insurer knows the risk it is undertaking when insuring a rental property. It insures the building for the use for which it is intended. While it may not have control over who the individual tenants are, it can increase its premiums to reflect increased risks presented by changing tenant use. Likewise, it can require the landlord to undertake any number of safety and structural precautions. We believe the landlord is the party in the best position to assume such responsibilities, and we reject the minority position on this issue.

*Id.*

Similarly, in *Cascade Trailer Court v. Beeson,* 749 P.2d 761 (Wash.Ct.App.1988), the landlord rented a single family dwelling to tenants who negligently caused a fire that destroyed the premises, and suit was filed against the tenants for the resulting damages. The lease in *Cascade* did not mention fire insurance. The landlord never advised the tenants to obtain fire insurance for the property and the tenants assumed the landlord had fire insurance. *Id.* at 762.

The trial court granted the tenants' motion for summary judgment and the court of appeals affirmed, holding that the landlord was presumed to carry fire insurance for the tenants' benefit absent an express lease provision to the contrary. *Id.* at 766. Focusing on the parties' expectations, the court held:

[T]he fact that the disputed lease provided the tenants would not negligently destroy the premises does not indicate the parties intended to limit the benefit of the insurance to the landlord. A tenant could sign the written lease at issue and reasonably never contemplate that if the premises were destroyed by a fire he [or she] negligently caused, his [or her] landlord's insurer could collect damages from him [or her]. We adopt the *reasonable expectations rationale* of the *Sutton* line of cases and hold [the landlord] is presumed to carry its insurance for the tenant's benefit because the lease did not contain an express provision to the contrary.

*Id.* (emphasis added).[3]

Commentators support the view that a tenant is not liable to the landlord's insurer absent an agreement to the contrary. Appleman's insurance treatise provides:

A person not named in an insurance policy is considered an insured for purposes of preventing subrogation when, under the circumstances, the insurer seeking subrogation is attempting, in effect, to recover from the insured on the risk the insurer had agreed to take upon payment of the premium.

. . . .

The modern trend of authority holds that the lessor's insurer cannot obtain subrogation against the lessee, in the absence of an express agreement or lease provision establishing the lessee's liability, because the lessee is considered a co-insured of the lessor for the purpose of preventing subrogation; the parties are co-insureds because of the *reasonable expectations* they derive from their privity under the lease, their insurable interests in the property, and the commercial realities under which lessors insure leased premises and pass on the premium cost in rent and under which insurers make reimbursement for fires negligently caused by their insureds' negligence.

6A John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 4055, at 77–78 (Supp.1991) (emphasis added).

This same philosophy is expressed in Keeton's treatise:

Probably it is undesirable, from the point of view of public interest, that the risk of loss from a fire negligently caused by a lessee be upon the lessee rather than the lessor's insurer. Allowing the lessor's insurer to proceed against the lessee is surely *contrary to expectations* of persons other than those who have been exposed to this bit of law either during negotiations for a lease or else after a loss.... [P]erhaps [the courts] should at least adopt a rule against allowing the lessor's insurer to proceed against the lessee when lease provisions are ambiguous in this regard and the insurance policy is silent or ambiguous.

Robert E. Keeton, *Insurance Law* § 4.4(b), at 210 (1971).[4]

We adopt the reasoning of the *Sutton* line of cases and hold that a tenant is presumed to be a coinsured of the landlord absent an express agreement between them to the contrary. This holding is consistent with our approach in *Fashion Place*, in which we embraced the rationale employed in the *Sutton* line of cases by citing them favorably in the

---

3. *But see Page v. Scott*, 263 Ark. 684, 567 S.W.2d 101 (1978) (en banc) (holding landlord may recover from tenant for fire damage caused by tenant's negligence regardless of existence of insurance); *Neubauer v. Hostetter*, 485 N.W.2d 87 (Iowa 1992) (permitting subrogation against negligent tenants because not coinsureds under landlord's fire insurance policy).

4. When the lease is silent on liability for negligence, other courts have found, because of additional facts, that a tenant is a coinsured and thus not liable. *See Alaska Ins. Co. v. RCA Alaska Communications*, 623 P.2d 1216 (Alaska 1981) (employing reasonable expectations analysis, court found tenant coinsured of landlord looking to other lease provisions); *Parsons Mfg. Corp., Inc. v. Superior Court*, 156 Cal.App.3d 1151, 203 Cal.Rptr. 419 (Ct.App.1984) (placing burden to insure on landlord because lease adverted to possibility of fire and had no contrary language); *Safeco Ins. Co. v. Weisgerber*, 115 Idaho 428, 767 P.2d 271 (1989) (denying subrogation action against tenant because looking to other lease provision, landlord should reasonably be expected to bear burden of insurance and fire damage); *McGinnis ex rel. C.I.E. Service Corp. v. LaShelle*,

166 Ill.App.3d 131, 116 Ill.Dec. 631, 519 N.E.2d 699 (1988) (looking to conduct of parties, court held no subrogation against commercial tenant absent express agreement that tenants were not coinsureds); *New Hampshire Ins. Group v. Labombard*, 155 Mich.App. 369, 399 N.W.2d 527 (1986) (construing additional lease provisions as evidencing parties' mutual expectation that landlord would insure); *Rock Springs Realty, Inc. v. Waid*, 392 S.W.2d 270 (Mo.1965) (ruling for tenant because lease provided for surrender in good condition, loss by fire excepted, and required tenant to comply with fire regulations); *Community Credit Union v. Homelvig*, 487 N.W.2d 602 (N.D.1992) (holding tenants leasing house by oral agreement were coinsureds; both landlord and tenants had liability insurance); *Monterey Corp. v. Hart*, 216 Va. 843, 224 S.E.2d 142 (1976) (holding other lease provisions evidenced intent to relieve tenant from fire damage liability); *Rizzuto v. Morris*, 22 Wash.App. 951, 592 P.2d 688 (1979) (finding landlord's failure to notify tenant of need to insure vitiated right of subrogation considering intent and conduct of parties).

body of the opinion. *See Fashion Place*, 776 P.2d at 944–45.

Our decision to adopt this presumption is further supported by several persuasive policy considerations. First, the landlord is the party in the best position to assume the responsibility to insure. *See Bruggeman*, 505 N.W.2d at 89. To escape the presumption, the landlord may simply by contract require the tenant to provide insurance. *See Sutton*, 532 P.2d at 482. This presumption is the most efficient way to allocate insurance costs. *Bruggeman*, 505 N.W.2d at 89. It is impractical to expect apartment dwellers to insure an entire building. Further, it is redundant for both the landlord and the tenant to separately insure the same building, especially since the landlord possesses a greater property interest. *See Aetna Ins. Co. v. Craftwall*, 757 F.2d 1030, 1034 (9th Cir.1985). Moreover, fire insurers expect to pay fire losses from negligence and calculate their rates upon that basis. *See Rock Springs Realty*, 392 S.W.2d at 278. An insurer knows the risks involved when insuring a rental property and insures the building for the use for which it is intended. *See Bruggeman*, 505 N.W.2d at 89.

In sum, we hold that a landlord is presumed to carry insurance for the tenant's benefit when the rental agreement is silent concerning responsibility for maintaining fire insurance. The rental agreement at hand did not address responsibility for fire insurance, nor did the parties discuss it. Under the agreement, liability for fire damage was not imposed on Fullmer, nor was he excused from such liability. Further, GNS did not tell Fullmer to procure fire insurance. Therefore, we hold that Fullmer is a coinsured under GNS's fire insurance policy for the limited purpose of defeating subrogation.

## II. AFFIDAVITS

### A. Houston Affidavit

Appellant next contends the court erred in striking paragraphs 5 and 6 of the Houston affidavit as they were admissible under Rule 56(e) of the Utah Rules of Civil Procedure. This rule provides that on a motion for summary judgment, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Utah R.Civ.P. 56(e). "[I]nadmissible evidence cannot be considered in ruling on a motion for summary judgment," *D & L Supply v. Saurini*, 775 P.2d 420, 421 (Utah 1989), so an affidavit which does not meet the requirements of rule 56(e) may be subject to a motion to strike. *Howick v. Bank of Salt Lake*, 28 Utah 2d 64, 65, 498 P.2d 352, 353–54 (1972).

The paragraphs of the Houston affidavit at issue provide:

> 5. Homeowners insurance policies generally extend liability coverage for children of the homeowners who are living away from home as students.
>
> . . . .
>
> 6. I have personal knowledge that State Farm Fire and Casualty writes and sells rental insurance for tenants which provides first-party coverage for personal property and liability coverage for damage caused by the tenant by fire to the apartment complex they live in. However, Brad Fullmer, as a student living away from home, would have been covered for liability under his parents' homeowners policy, and would not have needed a separate renters liability policy.

The court determined that these paragraphs were not relevant to its determination of liability and further concluded that the statements were not made upon the basis of personal knowledge. The court also stated in its ruling: "By striking these paragraphs, the Court remains mindful that renter's insurance is available and plaintiffs do not need an affidavit to establish and argue the availability of renter's insurance to cover personal property owned by an insured."

The stricken paragraphs discuss Houston's belief regarding Fullmer's parent's homeowner's policy, but do not indicate any personal knowledge regarding an actual insurance policy which might have been issued to Fullmer or his parents. Consequently, paragraphs 5 and 6 are not based on personal

knowledge, as required for affidavits submitted pursuant to Rule 56(e). Thus, the trial court was correct in striking them.

■ Further, an affidavit regarding the extent of homeowner's insurance and the availability of renter's insurance is not necessary to the resolution of this case. GNS acknowledges this, stating in its brief that "[i]n the event this court agrees that no affidavit is necessary, then [GNS's] objection to the court's striking the Houston affidavit is withdrawn. GNS raises this point simply to preserve rights in case this court determines an affidavit regarding availability of renter's insurance is necessary." Moreover, by stating that it was mindful of the availability of renter's insurance and that an affidavit to establish such availability was not necessary, the court apparently took judicial notice of this fact. Thus, even if it were error to strike the paragraphs at issue, the error was harmless. *See Broadwater v. Old Republic Sur.*, 854 P.2d 527, 533 (Utah 1993).

### B. Fullmer Affidavit

■ Appellant also challenges the denial of its motion to strike paragraphs 3 and 5 of Fullmer's May 14, 1992 affidavit. These paragraphs provide:

3. At no time did the owner or any person tell me that I needed to or should obtain insurance of any type on the structure or property at the Wedge Apartments. This was never discussed, nor did I understand that it could possibly be required. *I would have expected* that the owner would have his own insurance of whatever type he felt necessary.

5. I understood paragraph 4 of the lease, which addressed "disorderly, immoral or unlawful conduct of any kind ..." to mean that I would have to adhere to standards of gentlemanly conduct and that I could be asked to move from the apartments if my conduct fell below these standards. I never understood from paragraph 4 of the lease that if the apartments burned, that I would be required to pay the cost of rebuilding the apartments. *I would have expected* that the owner would have insurance in the event this occurred. No one ever requested or even suggested that I obtain my own insurance on the structure. (Emphasis added).

Appellant fails to argue the rule of evidence which precludes the admission of these statements, and we are at a loss to find one. These statements are made on the basis of personal knowledge and set forth facts admissible into evidence. The affidavits therefore complied with Rule 56(e).

Even assuming that the statements are inadmissible, GNS was not harmed by their admission because the trial court did not rely on them. In overruling GNS's objections to Fullmer's affidavit, the court observed that Fullmer's "affidavit had no bearing on the court's ultimate ruling." Thus, GNS was not prejudiced by the admission of those paragraphs. *See Broadwater*, 854 P.2d at 533 (affirming denial of motion to strike affidavit because not relevant to issues and admission was not prejudicial).

### CONCLUSION

The trial court did not err in granting summary judgment for Fullmer and dismissing the subrogation claim. GNS, the landlord, is presumed to carry insurance for Fullmer, its tenant, absent an agreement to the contrary. Further, the trial court was correct in striking paragraphs 5 and 6 of the Houston affidavit because they were neither based on personal knowledge nor relevant to the issue of liability. The Fullmer affidavit complied with Rule 56(e), and thus the trial court did not err in admitting it. In addition, even if the statements were inadmissible, GNS was not harmed by the admission because neither the trial court nor this court relied on them. We therefore affirm the summary judgment in favor of Fullmer.

BENCH and GREENWOOD, JJ., concur.