IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 1, 2004 Session

## ALLSTATE INSURANCE COMPANY v. ROBERT E. WATSON

### Appeal from the Circuit Court for Davidson County
No. 99C-1898    Hamilton Gayden, Judge

_____

### No. M2003-01574-COA-R3-CV - Filed February 25, 2005

_____

Allstate Insurance Company paid a fire loss to the landlord then brought an action against the tenant asserting subrogation rights. The trial court held the tenant to be blameless as to the fire but found him liable under the terms of the lease, which provided that the tenant would be "responsible for all damages to the apartment, intentional or non intentional". Since we find the tenant to be an additional insured under the Allstate policy, no subrogation rights exist, and we reverse the trial court.

**Tenn. R. App. P.3 Appeal as of right; Judgment of the Circuit Court Reversed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., and FRANK G. CLEMENT, JR., J., joined.

Jamie D. Winkler, E.Todd Presnell, Nashville, Tennessee, for the appellant, Robert E. Watson.

John R. Cheadle, Jr., Nashville, Tennessee, for the appellee, Allstate Insurance Co.

### OPINION

The facts of this case are essentially undisputed. Kevin W. Williams owned a house located at 909 30th Avenue North, Nashville, Tennessee. Robert Watson leased the premises from Williams and occupied the property as his home. Williams procured a policy of fire insurance from Allstate Insurance Company. A fire occurred at the premises on June 15, 1998, resulting in damages in the amount of $25,788.47. Allstate paid the loss to its named insured, Kevin W. Williams, and on June 12, 1999, brought suit against the tenant, Robert Watson, asserting subrogation rights under its policy with the landlord. After a non-jury trial, the trial judge found that the fire did not result from any negligence of Watson, the lessee, but further found that Allstate was entitled to subrogation against Watson and that he was liable for the loss because of a provision in the lease. This provision states: "Residents are responsible for all damages to the apartment, intentional or non intentional. Owner is to be notified of all damages and will provide the repairs."

The trial court held:

> The lease contract speaks for itself. The lease imposes responsibility on the part of the defendant whereby: "Residents are responsible for all damages to the apartment, intentional or non intentional." The Court further finds that the fire was more probably than not caused by a short in the extension cord placed in the apartment by defendant. The wire was pushed underneath the molding by some sharp object. The fire could have been caused by a cigarette, not the fault of the lessor, or could have been caused by the telephone, the telephone having been placed in the leased premises by defendant. The court finds that the defendant's actions were not negligent. The Court further finds that the fire was caused by something other than what was inherent in the physical surroundings of the leased property. Plaintiff proved that the damage was not due to the physical parts of the building leased by defendant, such as the roof, the walls, and the wiring. Under the terms of the lease providing that "residents are responsible for all damages to the apartment, intentional or non intentional", defendant would therefore be liable to plaintiff for the amount of the damage, which defendant admitted was $25,788.47.

Robert Watson filed a timely appeal.

The issues presented on appeal as stated by Appellant, Watson, are:

1.      Whether the trial court erred in denying Mr. Watson's Rule 41.02 Motion for Involuntary Dismissal by ruling that he was liable under the provisions of a lease agreement requiring residents to be responsible for all damages to the property "intentional or non intentional?"

2.      Whether the lower courts erred in denying Robert Watson's Motion to Dismiss or, in the Alternative Motion for Summary Judgment and Motion in Limine based on the spoliation of evidence doctrine?

At no point in the proceedings, either in the trial court or before this Court prior to oral argument, did anyone raise any issue as to the right of Allstate to subrogation under the facts of this case or as to the status of Watson as an additional insured under the Allstate policy. As we deemed these issues to be possibly dispositive of all issues in the case, counsel were invited to submit supplemental briefs addressing these issues. The parties promptly responded, and we have determined that these issues are dispositive of the appeal in that Watson is an additional insured under the policy of insurance issued by Allstate and that Allstate has no subrogation rights against an insured under its policy.

Critical to this holding is the fact that the lease agreement at issue requires neither the landlord nor the tenant to procure insurance on the property. The only mention of insurance is the

provision in the lease that "it is agreed that it is the residents' responsibility to insure their property and safeguard against personal loss."

While this specific issue has not been addressed by the courts of Tennessee, it was addressed in a rather exhaustive opinion by the United State District Court for the Middle District of Tennessee in *Tate v. Trialco Scrap, Inc.,* 745 F.Supp. 458 (M.D. Tenn. 1989). Also, a significant body of law has developed in sister jurisdictions culminating in an extensive holding by the Supreme Court of Nebraska on June 4, 2004, in *Tri-Par Investments, LLC v. Sousa,* 680 N.W.2d 190 (Neb. 2004).

The presumptive insured status of the lessee under a policy issued to the lessor seems to have its origin in *Sutton v. Jondahl*, 532 P.2d 478 (Okla.Ct.App 1975). In that case, the landlord's fire insurance carrier sued a tenant and his 10-year-old son claiming subrogation rights as to a fire loss caused by the son's experimentation with an inexpensive chemistry set given him by his father. The jury returned a verdict against the father only, and on appeal, the court of appeals held that the insurance company had no right of subrogation against the father. In rather colorful language, the court held:

> The principle of subrogation was begotten of a union between equity and her beloved – the natural justice of placing the burden of bearing a loss where it *ought to be*. Being so sired this child of justice is without the form of a rigid rule of law. On the contrary it is a fluid concept depending upon the particular facts and circumstances of a given case for its applicability. To some facts subrogation will adhere – to others it will not. *Home Owners' Loan Corp. v. Parker*, 181 Okl. 234, 73 P.2d 170 (1937).
>
> Under the facts and circumstances in this record the subrogation should not be available to the insurance carrier because the law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary, comparable to the permissive-user feature on automobile insurance.

*Sutton,* 532 P.2d at 481-82.

The Court of Appeals of Utah in *GNS Partnership v. Fullmer,* 873 P.2d 1157 (Utah Ct.App. 1994) addressed a subrogation claim asserted by a landlord's fire and casualty insurer against a tenant for a fire loss allegedly caused by the negligence of the tenant. The trial court granted summary judgment to the tenant, and on appeal, the court of appeals expanded its previous ruling in *Fashion Place Investment, Ltd. v. Salt Lake County,* 776 P.2d 941 (Utah Ct.App. 1989) and affirmed the trial court. Said the court:

> After *Fashion Place*, it is clear that a tenant in Utah attains the status of a de facto coinsured, even if not named as an insured, if the landlord is required by contact to carry insurance. However, the critical distinction between *Fashion Place* and the case at hand is that in *Fashion Place*, the landlord agreed to insure the premises in the rental agreement, while the rental agreement in the present case is silent regarding

liability for fires negligently started by a tenant and responsibility for insurance maintenance.

Consequently, our case is not directly controlled by *Fashion Place*. Whether a tenant is presumed to be a coinsured when there is no written or oral agreement between the parties regarding liability for negligence and/or responsibility for fire insurance coverage is an issue of first impression in Utah. *Fashion Place* simply takes the first step in resolving this question. We take the next step today.

There is a split of authority among the jurisdictions that have considered this issue. The majority hold the landlord's insurance is presumed to be held for the tenant's benefit as a coinsured in the absence of an express agreement to the contrary. Conversely, the minority hold the tenant liable in a subrogation action, absent an express agreement to the contrary. We find the majority view to be the more persuasive.

*GNS P'ship*, 873 P.2d at 1161. We find the reasoning of *GNS Partnership* persuasive. The Utah Court of Appeals continues:

Similarly, in *Cascade Trailer Court v. Beeson* 749 P.2d 761 (Wash.Ct.App.1988), the landlord rented a single family dwelling to tenants who negligently caused a fire that destroyed the premises, and suit was filed against the tenants for the resulting damages. The lease in *Cascade* did not mention fire insurance. The landlord never advised the tenants to obtain fire insurance for the property and the tenants assumed the landlord had fire insurance. *Id.* at 762.

The trial court granted the tenants' motion for summary judgment and the court of appeals affirmed, holding that the landlord was presumed to carry fire insurance for the tenants' benefit absent an express lease provision to the contrary. *Id.* at 766. Focusing on the parties' expectations, the court held:

> [T]he fact that the disputed lease provided the tenants would not negligently destroy the premises does not indicate the parties intended to limit the benefit of the insurance to the landlord. A tenant could sign the written lease at issue and reasonably never contemplate that if the premises were destroyed by a fire he [or she] negligently caused, his [or her] landlord's insurer could collect damages from him [or her]. We adopt the *reasonable expectations rationale* of the *Sutton* line of cases and hold [the landlord] is presumed to carry its insurance for the tenant's benefit

> > because the lease did not contain an express provision
> > to the contrary.

*Id.* (emphasis added).

Commentators support the view that a tenant is not liable to the landlord's insurer absent an agreement to the contrary. Appleman's insurance treatise provides:

> A person not named in an insurance policy is considered an insured for purposes of preventing subrogation when, under the circumstances, the insurer seeking subrogation is attempting, in effect, to recover from the insured on the risk the insurer had agreed to take upon payment of the premium.
>
> . . . .
>
> The modern trend of authority holds that the lessor's insurer cannot obtain subrogation against the lessee, in the absence of an express agreement or lease provision establishing the lessee's liability, because the lessee is considered a co-insured of the lessor for the purpose of preventing subrogation; the parties are co-insureds because of the *reasonable expectations* they derive from their privity under the lease, their insurable interests in the property, and the commercial realities under which lessors insure leased premises and pass on the premium cost in rent and under which insurers make reimbursement for fires negligently caused by their insureds' negligence.

6A John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 4055, at 77-78 (Supp.1991) (emphasis added).

This same philosophy is expressed in Keeton's treatise:

> Probably it is undesirable, from the point of view of public interest, that the risk of loss from a fire negligently caused by a lessee be upon the lessee rather than the lessor's insurer. Allowing the lessor's insurer to proceed against the lessee is surely *contrary to expectations* of persons other than those who have been exposed to this bit of law either during negotiations for a lease or else after a loss . . . . [P]erhaps [the courts] should at least adopt a rule against the lessee when lease provisions are ambiguous in this regard and the insurance policy is silent or ambiguous.

Robert E. Keeton, *Insurance Law* § 4.4(b), at 210 (1971).

-5-

*GNS P'ship,* 873 P.2d at 1162-63.

The supreme court of Vermont also engaged in an extensive and informative discussion of the entire subject of subrogation actions against tenants in *Union Mutual Fire Insurance Co. v. Joreg,* 824 A.2d 586 (Vt. 2003). That case involved a lease containing a provision requiring the landlord to have insurance on the premises and is, thus, not directly in point as to the issue before this Court; but, the extensive and authoritative discussion by the Vermont court is expositive of both the majority rule founded in *Sutton* and the minority rules, one based in part on *Neubauer v. Hostetter,* 485 N.W.2d 87 (Iowa 1992), the other a case-by-case analysis rule based on *Page v. Scott,* 567 S.W.2d 101 (Ark.1978).

*In Tri-Par Investments*, action was brought by the landlord's insurer against a tenant for damage by fire allegedly caused by the negligence of the tenant. The Supreme Court of Nebraska stated the issue in terms that might well be paraphrased in stating the issue in the case at bar. Said the court:

> Today, we are asked to weigh in on a dispute that has raged in subrogation jurisprudence for the last 30 years. Specifically, we are asked to decide whether, for subrogation purposes, the law presumes that a tenant is coinsured under his or her landlord's insurance policy absent an express provision in the parties' lease to the contrary. Because the right of subrogation cannot arise in favor of an insurer against its own insured, *see Jindra v. Clayton*, 247 Neb. 597, 529 N.W.2d 523 (1995), such a presumption would bar insurers from bringing a subrogation action against tenants who cause damage to their landlords' insured premises. In the instant case, the district court, relying on our opinions in *Reeder v. Reeder,* 217 Neb. 120, 348 N.W.2d 832 (1984), and *Jindra, supra,* determined that such a presumption applied. Stated otherwise, the district court determined that because there was no express agreement to the contrary in the lease, Sousa was an implied coinsured under Tri-Par's insurance policy with Auto-Owners and that therefore, Tri-Par was prohibited from bringing a subrogation action on behalf of Auto-Owners against Sousa. We affirm.

*Tri-Par, Inv.,* 680 N.W.2d. at 194.

After discussing the various rules in sister jurisdictions, the Supreme Court of Nebraska held:

> In the instant case, Tri-Par asks us to adopt the case-by-case approach epitomized by *56 Associates ex rel. Paolino* and *Sahlberg.* Sousa, on the other hand, asks us to adopt the per se approach announced in *Sutton*. Because we believe *Sutton* and its progeny are in line with our prior cases and represent the better rule, we explicitly adopt that rule for Nebraska.
>
> . . . .

-6-

Moreover, even if we had reason to answer the issue anew, we would adopt the *Sutton* rule because it represents the better public policy. As an initial matter, a pure *Sutton* approach has the benefit of providing legal certainty. For example, the *Sutton* rule prevents landlords from engaging in gamesmanship when drafting leases by providing the necessary incentive for them, if they so desire, to place express subrogation provisions in their leases. If such a provision is placed in their lease, tenants will be on notice that they need to purchase liability insurance. If such a provision is not included in their lease, insurers will pass the increased risk along to landlords in the form of higher premiums, and landlords, in turn, will pass along the higher premiums to tenants in the form of increased rent. As the court in *Sutton* did 30 years ago, we acknowledge that this is almost certainly the current commercial reality.

In addition, we continue to believe that absent an express agreement alerting them otherwise, the *Sutton* rule comports with the reasonable expectations of tenants. Moreover, the *Sutton* rule accounts for modern commercial realities by preventing the economic waste that will undoubtedly occur if each tenant in a multiunit dwelling or multiunit rental complex is required to insure the entire building against his or her own negligence. In sum, *Sutton* and its progeny represent the better reasoned rule. Therefore, we hold that absent an express agreement to the contrary in a lease, a tenant and his or her landlord are implied coinsureds under the landlord's fire insurance policy, and the landlord's liability insurer is precluded from bringing a subrogation action against the negligent tenant.

*Tri-Par Inv.,* 680 N.W.2d at 198-99.

While a number of cases, including *Neubauer v. Hostetter*; 485 N.W.2d 87 (Iowa 1992); *Zoppi v. Traurig,* 598 A.2d 19 (N.J. Super. Ct. Law Div. 1990); *Galante v. Hathoway Bakeries, Inc.,* 176 N.Y.S.2d. 87 (N.Y. App. Div. 1958); and *Winkler v. Appalachian Amusement Co.,* 79 S.E.2d 185 (N.C. 1953), have rejected the reasoning of *Sutton*, there can be little doubt that the Supreme Court of Nebraska is correct in asserting:

Generally speaking, the *Sutton* rule is the majority position and the modern trend in the law. See, e.g., *North River Ins. Co. v. Snyder*, 804 A.2d 399 (Me.2002); *DiLullo v. Joseph,* 259 Conn. 847, 792 A.2d 819 (2002); *Peterson v. Silva*, 428 Mass. 751, 704 N.E.2d 1163 (1999); *Community Credit Union v. Homelvig*, 487 N.W.2d 602 (N.D.1992); *Alaska Ins. Co. v. RCA Alaska Commun.,* 623 P.2d 1216 (Alaska 1981); *GNS Partnership v. Fullmer*, 873 P.2d 1157 (Utah App.1994); *United Fire & Cas. Co. v. Bruggeman*, 505 N.W.2d 87 (Minn.App.1993); *Cascade Trailer Court v. Beeson*, 50 Wash.App. 678, 749 P.2d 761 (1988); *New Hampshire Ins. v. Labombard*, 155 Mich.App. 369,399 N.W.2d 527 (1986). See, generally, 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 224:6 (2000).

*Tri-Par Inv.,* 680 N.W.2d at 195.

The subrogation issue under these circumstances is one of first impression in Tennessee, though the question was addressed at length by the United States District Court for the Middle District of Tennessee in *Tate v. Triaclo Scrap, Inc.* However, *Tate* is not directly in point since the lease agreement contained a provision requiring the lessor to procure insurance. After observing that Tennessee case law provided no satisfactory answer, Judge Clure Morton embarked upon a near encyclopedic treatment of decisions from other jurisdictions and asserted:

> The modern trend throughout the nation is to prohibit lessor's insurers from recovering against negligent lessees unless the rental contract clearly expresses a contrary intent. In fact, this court is aware of only two decisions in this decade in which a court held a tenant liable in a subrogation action brought by the landlord's insurer. *United States Fidelity & Insurance Co. v. Let's Frame It, Inc.* 759 P.2d 819 (Colo.App.1988); *Federal Insurance Co. v. Paulk*, 173 Ga.App. 266, 325 S.E.2d 886 (1985). Perhaps there are more, but the clear majority of recent decisions have denied such recovery. At least eight jurisdictions, including Georgia from whence came *Paulk, supra,* have produced one or more cases each in the last decade which excused the tenant from liability.

*Tate,* 745 F.Supp. at 467.

Judge Morton finally concluded that, when called upon to determine the issue, Tennessee would adopt the majority rule as asserted in *Sutton.* Said the court:

> Because Tennessee law is unclear, and because there is a split of authority among other jurisdictions, this court ultimately bases its prediction of Tennessee law on what it perceives to be the most sound public policy.
>
> . . . .
>
> The realities of who ultimately pays for the insurance also support adoption of this rule. Despite the fact that the lessor may actually send the premium check to the insurance company, the lessee ultimately pays for insurance through his rent checks, because the lessor takes his own costs into account when setting rent. If the lessee is ultimately the source for the insurance payment, simple equity would suggest that he be able to benefit from that payment unless he has clearly bargained away that benefit. Subrogation being an equitable doctrine, it is only appropriate to consider this equitable factor in determining whether or not subrogation is appropriate in this instance. Likewise, this fits with the natural expectations of the parties since it is logical for parties to expect to benefit from what they pay for.

*Tate,* 745 F.Supp. at 473.

The court concludes its expositive discussion with the observation that:

At the very least, this rule is certainly the modern trend. Finally, this court also concludes that sound public policy supports this rule. When applied to the facts at hand, the rule dictates dismissal of this subrogation action because there was no clear expression on intent that the insurance be for the benefit of the lessor only.

Id. at 475.

Following the very persuasive suggestions in *Tate* and the obvious majority rule adopted in sister jurisdictions as exemplified by *Sutton, GNS Partnership,* and *Tri-Par Investments*, we conclude, as did the *Tri-Par Investments* court, that " absent an express agreement to the contrary in a lease, a tenant and his or her landlord are implied coinsureds under the landlord's fire insurance policy, and the landlord's liability insurer is precluded from bringing a subrogation action against the negligent tenant." *Tri-Par Inv.,* 680 N.W.2d at 199.

It is well to note that *Sutton* and its progeny are not determined on the basis of which party under the lease agreement bears responsibility in negligence or otherwise for a fire loss to the premises. The issue is one of insurance and the equitable doctrine of subrogation. The Supreme Court of Maine held:

North River argues that we should decline to adopt the so-called *Sutton* rule because it abrogates the terms of the insurance contract between the landlord and North River, and that tenants should be liable for their negligence. The Snyders argue that the "implied co-insured doctrine" is a sound, equitable rule, which explains why the majority of jurisdictions have adopted it.

The "implied co-insured doctrine" emerged in *Sutton*. The court held: "[S]ubrogation should not be available to the insurance carrier because the law considers the tenant as a co-insured of the landlord absent an express agreement between them to the contrary, comparable to the permissive-user feature of automobile insurance." *Id.* at 482.

. . . .

For residential tenants, we agree with the rationale advanced in the *DiLullo* opinion. When the lease does not contain an express agreement addressing the issue of subrogation in the event of a negligently caused fire by a tenant, as the magistrate found in this case, a landlord's insurer may not proceed against the tenant as subrogee.

*North River Ins. Co. v. Snyder,* 804 A.2d 399, 402-04 ( Me. 2002). The Supreme Court of Maine then, in footnote, stated: "Courts consider the tenant an implied co-insured for the "limited purpose"

of subrogation. *GNS P'ship v. Fullmer,* 873 P.2d 1157, 1162 (Utah Ct.App.1994) (citing *United Fire & Cas. Co. v. Bruggeman*, 505 N.W.2d 87, 89 (Minn.Ct.App.1993))." *North River Ins. Co.,* 804 A.2d at 402 n.6.

Even those authorities which are critical of *Sutton* acknowledge that " '[c]ases following *Sutton*, have at least impliedly restricted the co-insurance relationship to one limited solely to the purpose of prohibiting subrogation.' " *DiLullo v. Joseph* 792, A.2d 819, 822 (Conn.2002).

That the whole subject of *Sutton* and its progeny involves, not responsibility for loss under the lease agreement, but contractual allowance for subrogation based upon a provision in the lease is clearly evidenced by Judge Morton's holding that "[w]hen applied to the facts at hand, the rule dictates dismissal of this subrogation action because there was no clear expression on intent that the insurance be for the benefit of the lessor only." *Tate,* 745 F.Supp at 475.

To resolve this appeal on an issue never drawn by the pleadings, never asserted by the parties, never tried before the trial court, never contemplated in the trial court's ruling and never addressed by the parties in appellate briefs is an action that cannot, and should not, be taken lightly. This issue was raised for the first time by this Court in oral argument when the Court called to the attention of the parties the extensive opinion of Judge Clure Morton in *Tate*.

Tennessee Rule of Appellate Procedure 13(b) ordinarily limits the scope of review to the issues raised by the parties themselves. We are not in this case, however, dealing alone with the purely private relationship between this particular landlord and tenant. In a similar context, the Supreme Court of Tennessee held:

> However, the defendants insist that a residential lease between a landlord and a tenant is a purely private affair, and not a matter of public interest. We disagree. We rejected this same argument in *Olson* and find persuasive the reasoning of the Washington Supreme Court, which, in response to the very same argument, stated:
> > [W]e are not faced merely with the theoretical duty of construing a provision in an isolated contract specifically bargained for by *one landlord and one tenant* as a purely private affair. Considered realistically, we are asked to construe an exculpatory clause, the generalized use of which may have an impact upon thousands of potential tenants.
> *McCutcheon v. United Homes Corp.*, 79 Wash.2d 443, 449-50, 486 P.2d 1093, 1097 (1971) (emphasis in original).

*Crawford v. Buckner,* 839 S.W.2d 754, 758 (Tenn. 1992).

Relative to the authority of this Court to address issues not raised by the parties, this Court has held:

Tenn.R.App.P. 13 and 36 control the proper scope of appellate review. While Tenn.R.App.P. 13(b) ordinarily limits the scope of review to the issues raised by the parties themselves, it also permits appellate courts to consider issues not raised by the parties to prevent needless litigation, to prevent injury to the interests of the public, or to prevent prejudice to the judicial process. In addition, Tenn.R.App.P. 36(a) empowers appellate courts to "grant the relief on the law and facts to which the party is entitled or the proceeding otherwise requires . . . ." Taken together, these rules permit the appellate courts to grant complete relief to the parties as long as they have been given fair notice and an opportunity to be heard on the dispositive issues.

Tennessee's appellate courts have long had the responsibility to render the judgment that the trial court, sitting as the trier-of-fact, should have rendered. *See Perry v. Carter,* 188 Tenn. 409, 411-12 219 S.W.2d 905, 906 (1949); *Toomey v. Atyoe,* 95 Tenn.373, 381-82, 32 S.W. 254, 256 (1895). This responsibility includes entering judgments based on the preponderance of the evidence and the applicable law. *See Roberts v. Robertson County Bd. of Educ.,* 692 S.W.2d 863, 874 (Tenn.Ct.App. 1985). Thus, as Judge Tomlin has noted, we may elect to wrestle with the octopus rather than remand the case for further time-consuming and costly wrestling in the trial court. *See American Bldgs. Co. v. DBH Attachments, Inc.,* 676 S.W.2d 558, 562 (Tenn.Ct.App.1984). We should, however, stay our hand when rendering a judgment pursuant to Tenn.App.P. 36(a) would be unfair to the parties. *See Cooper v. Polos,* 898 S.W.2d 237, 242 (Tenn.Ct.App.1995) (declining to grant final relief based on evidence that the trial court had excluded).

*Realty Shop, Inc. v.RR Westminster Holding, Inc.,* 7 S.W.3d 581, 608 (Tenn.Ct.App. 1999).

The subrogation issue determinative of this case is an issue of law, since it is undisputed and indisputable that the lease agreement between the parties is silent as to any obligation upon either of the parties to insure the leased premises. Following oral argument, we asked the parties to brief the issue, and both parties responded with excellent and expositive briefs. We are satisfied that the parties have been given fair opportunity to address the issue and, indeed, have done so. This Court has held:

As a general matter, appellate courts will decline to consider issues raised for the first time on appeal that were not raised and considered in the trial court. *Reid v. State,* 9 S.W.3d 788, 796 (Tenn.Ct.App.1999). However, Tenn.R.App.P. 13(b) and 36(a) give appellate courts considerable discretion to consider issues that have not been properly presented in order to achieve fairness and justice. *Aaron v. Aaron,* 909 S.W.2d 408, 412 (Tenn. 1995). Taken together, these rules permit appellate courts to grant complete relief to the parties as long as they have been given fair notice and an opportunity to be heard on the dispositive issues. *Realty Shop, Inc. v. RR Westminster Holding, Inc.,* 7 S.W.3d 581, 608 (Tenn.Ct.App.1999).

*Heatherly v. Merrimack Mut. Fire Ins. Co.,* 43 S.W.3d 911, 916 (Tenn.Ct.App.2000).

In a similar context, the Tennessee Supreme Court recently observed in footnote:

The dissent contends that the issue of unconscionability was waived because it was not raised until the case was before this Court, and therefore should not be considered. The majority agrees with the dissent to the extent that the pleadings are vague and unclear as to the issues raised by the pleadings. However, this appeal requires us to interpret the provisions of the contract, and the majority is of the opinion that we would not be doing justice in this case were we to consider only the duties and obligations of Ms. Taylor under the contract and not look to the rights and remedies available to the defendant.

*Taylor v. Butler*, 142 S.W.3d 277, 283 n.2 (Tenn.2004).

In view of the undisputed origin of the fire, the assertions by Watson about spoliation of evidence can establish, at most, harmless error.

The judgment of the trial court is reversed, and the case remanded to the trial court to be dismissed on the basis that the insurer of the landlord has no subrogation rights against the tenant. Costs are assessed to Appellee.

_____
WILLIAM B.CAIN, JUDGE