the appellees had financing in place and had expressed their ability and willingness to perform under the contract. In the face of Benson's repudiation, the appellees were not required to tender the money due under the Purchase Agreement. Such would have been a useless act. The district court determined that the appellees' efforts were sufficient and that thus, Benson was in breach at the time for performance. Based on the applicable law and the district court's findings, which are supported by the record, we see no error. We find no merit to Benson's assignments of error regarding repudiation and breach of contract.

## CONCLUSION

The district court determined that Benson breached the Purchase Agreement by refusing to sell her interest in the property at issue and awarded damages to the appellees. For the reasons explained above, we find no merit to Benson's assignments of error and, accordingly, affirm.

AFFIRMED.

————————

SFI LTD. PARTNERSHIP 8, A NEBRASKA
LIMITED PARTNERSHIP, APPELLANT, V.
MICHELLE CARROLL, APPELLEE.
___ N.W.2d ___

Filed August 1, 2014.    No. S-13-192.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
2. **Subrogation: Words and Phrases.** Generally, subrogation is the right of one, who has paid the obligation which another should have paid, to be indemnified by the other.
3. **Contracts: Insurance: Subrogation.** Subrogation applies to an insurer's right to proceed against a third party responsible for a loss which the insurer has compensated pursuant to its contractual obligation under a policy, and which depends, inter alia, on the existence of the insured's right to proceed against that entity.

4. **Contracts: Insurance: Subrogation: Equity: Tort-feasors.** In the context of insurance, the right to equitable subrogation is generally based on two premises: (1) A wrongdoer should reimburse an insurer for payments that the insurer has made to its insured, and (2) an insured should not be allowed to recover twice from the insured's insurer and the tort-feasor.

5. **Contracts: Insurance: Subrogation.** Under the antisubrogation rule, no right of subrogation can arise in favor of an insurer against its own insured or coinsured for a risk covered by the policy, even if the insured is a negligent wrongdoer.

6. **Insurance: Subrogation.** The antisubrogation rule has been extended to implied coinsureds.

7. **Contracts: Insurance: Subrogation: Presumptions: Negligence.** Absent an agreement to the contrary, the law presumes that a tenant is coinsured under a landlord's fire insurance policy and that therefore, a landlord's insurer cannot maintain a subrogation action against a tenant for damage to the insured property that is caused by the tenant's negligence.

8. **Rules of the Supreme Court: Pleadings: Waiver: Appeal and Error.** A question concerning the waiver of an affirmative defense involves the interpretation of Neb. Ct. R. Pldg. § 6-1108(c) and, as such, is a question of law reviewed de novo.

9. **Pleadings.** The issues in a given case will be limited to those which are pled.

10. **Rules of the Supreme Court: Pleadings.** Under Neb. Ct. R. Pldg. § 6-1108(c), a party pleading to a preceding pleading must set forth affirmatively matters constituting an avoidance or affirmative defense.

11. ____: ____. The federal rules of pleading, which Nebraska has generally adopted, were designed to liberalize pleading requirements.

12. **Leases: Contracts: Public Policy.** The interpretation of a lease, the unconscionability of a contract provision, and the determination of whether a contract violates public policy are questions of law.

13. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court.

14. **Contracts: Insurance: Landlord and Tenant.** Renter's insurance is a contents policy which covers tenant's possessions, such as furniture, appliances, personal belongings, and household goods. However, renter's insurance does not typically cover the structure of the leased premises.

15. **Contracts: Public Policy.** Courts should be cautious in holding contracts void on the ground that the contract is contrary to public policy; to be void as against public policy, the contract should be quite clearly repugnant to the public conscience.

16. **Words and Phrases.** The term "unconscionable" means manifestly unfair or inequitable.

17. **Courts: Contracts: Leases.** Where a court finds that a rental agreement or any provision thereof was unconscionable when made, the court may refuse to enforce the agreement, enforce the remainder of the agreement without the unconscionable provision, or limit the application of any unconscionable provision to avoid an unconscionable result.

18.  **Landlord and Tenant: Negligence: Damages.** Notwithstanding the provisions of Neb. Rev. Stat. § 76-1429 (Reissue 2009), the tenant is responsible for damage caused by his or her negligence.

19.  **Statutes.** To the extent there is conflict between two statutes on the same subject, the specific statute controls over the general statute.

20.  **Landlord and Tenant: Leases: Negligence: Damages: Public Policy: Statutes.** Where a specific statute holds a tenant responsible for fire damages caused by his or her negligence, a court cannot hold a lease provision doing so as void against public policy or unconscionable.

21.  **Summary Judgment: Final Orders: Appeal and Error.** Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct such further proceedings as it deems just.

Appeal from the District Court for Sarpy County: William B. Zastera, Judge. Reversed and remanded for further proceedings.

Jeffrey A. Silver for appellant.

Todd R. McWha, Angela M. Franz, and Patrick Heng, of Waite, McWha & Heng, for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## I. INTRODUCTION

In previous cases, we have applied an antisubrogation rule to prohibit a landlord's insurer from seeking reimbursement from the tenant of fire losses paid by insurance. In this appeal, we decline to extend the antisubrogation rule to a landlord's uninsured losses allegedly caused by its tenant's negligence. We therefore reverse the district court's summary judgment in favor of the tenant. But because the tenant has not been determined to have been free from negligence, we decline to address whether specific provisions in the lease are unconscionable or void as against public policy. Accordingly, we remand the cause to the district court for further proceedings consistent with this opinion.

## II. BACKGROUND

### 1. Lease

SFI Ltd. Partnership 8 (SFI) owns an apartment complex containing approximately 200 apartments. Through its agent, SFI leased an apartment to Michelle Carroll. SFI's agent and Carroll signed a residential lease agreement including various addendums. The lease employed a standard form used for all units in the complex. Tenants were not allowed to change any of the provisions of the lease or addendums.

The lease included provisions requiring Carroll to pay for repairs caused by her use of the unit and to maintain renter's insurance including "a personal liability coverage to a minimum of $100,000.00." We will recite the pertinent provisions of the lease only as it becomes necessary.

### 2. Fire and Insurance Policies

A fire occurred in the apartment rented to Carroll. Both the apartment and the surrounding building were damaged.

SFI had $10 million of total insurance coverage on the apartment complex. The policy provided for a deductible of $250,000 per occurrence unless a specific deductible applied. However, the forms schedule attached to the policy referred to two endorsements not included in the copies attached to the stipulation. Thus, we cannot discern whether the policy provided for a specific deductible attributable to the loss in this instance.

The parties stipulated that SFI sustained damages in excess of $100,000 resulting from the fire, which damages were not covered by its insurance policy. But neither the total amount of damages nor the amount of any insurance recovery by SFI was included in the evidence.

Carroll had renter's insurance in place at that time, and she submitted a claim to her insurer. Carroll's insurer paid her $1,500, representing only her damages under "Loss of Use Coverage."

### 3. Lawsuit

SFI sued Carroll and attached a copy of the lease to the complaint. SFI alleged that Carroll breached several provisions

of the lease. SFI further alleged that Carroll was negligent in failing to properly dispose of cigarettes being smoked in the apartment and that this negligence proximately caused the damage to the apartment and surrounding building.

Carroll filed an answer. She alleged that the fire was caused by someone else; that SFI's claims were barred because she and SFI were considered coinsureds under SFI's fire insurance policy, as set forth in *Tri-Par Investments v. Sousa*[1]; that several paragraphs of the lease were unconscionable and void as against public policy; and that SFI failed to mitigate any damages.

Carroll moved for summary judgment. SFI then moved for partial summary judgment on Carroll's claim that several paragraphs of the lease were unconscionable and void as against public policy.

The parties stipulated that SFI brought the claim in its own behalf. They also stipulated that it was not a subrogation claim.

## 4. District Court's Decision

Following a hearing, the district court granted Carroll's motion for summary judgment, denied SFI's motion for partial summary judgment, and dismissed the complaint. The court stated that the crux of the case revolved around paragraph 17 of the lease, which stated:

> Resident's personal property is not insured or covered by Landlord for loss of any kind, including without limitation, loss due to theft, fire, smoke, wind, rain, lightening [sic], seismic occurrence or water damage.
>
> Evidence of renter's insurance is required at the time of occupancy and Resident agrees to maintain such Renter's Insurance throughout its residency. The renter's insurance to be maintained by Resident shall include a personal liability coverage to a minimum of $100,000.00. Resident agrees to provide proof of such renter's insurance from time to time as requested by Landlord.

---

[1] *Tri-Par Investments v. Sousa*, 268 Neb. 119, 680 N.W.2d 190 (2004).

The court agreed with Carroll's contention that the lease was "void for public policy because it is a gross economic waste to require every tenant to insure the entire rental complex." The court stated:

> In the instant case, this Court finds that Paragraph 17 of the Residential Lease is void for public policy and unconscionable because [SFI] cannot require each of its tenants to insure its building. [Carroll] lived in a multi-unit building, where each tenant was required to have renter's insurance in an amount equal to at least $100,000.00. Based on the views expressed in [*Tri-Par Investments*[2]], this Court finds that it is not in the public interest to require all tenants to insure the building in which they share. As the Nebraska Supreme Court noted in [*Tri-Par Investments*], the more sound approach would be for a landlord to carry a fire insurance policy on the complex and to pass that cost along to the tenants in the form of higher rent.

SFI filed a timely appeal, and we granted its petition to bypass the Nebraska Court of Appeals.

## III. ASSIGNMENTS OF ERROR

SFI assigns that the district court erred as a matter of law in (1) sustaining Carroll's motion for summary judgment after finding that paragraph 17 of the lease was void as against public policy when Carroll did not allege in her answer that paragraph 17 of the lease was unconscionable and void as against public policy; (2) determining that SFI's action was barred by *Tri-Par Investments*[3]; and (3) overruling SFI's motion for partial summary judgment that paragraphs 10q, 15, and 16 of the lease were not unconscionable or void as against public policy.

## IV. STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence

---

[2] *Id.*

[3] *Id.*

show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[4]

We set forth other pertinent standards of review at appropriate points in the analysis.

## V. ANALYSIS

### 1. Subrogation and *Tri-Par Investments* Rule

Carroll admits that "this is not a true subrogation claim, [but] is a claim by a landlord against a tenant for the uninsured portion that public policy still bars as a gross economic waste."[5] In order to understand the parties' arguments, we briefly recall the concept of subrogation and the antisubrogation rule.

### (a) Subrogation

[2-4] Generally, subrogation is the right of one, who has paid the obligation which another should have paid, to be indemnified by the other.[6] Subrogation applies to an insurer's right to proceed against a third party responsible for a loss which the insurer has compensated pursuant to its contractual obligation under a policy, and which depends, inter alia, on the existence of the insured's right to proceed against that entity.[7] In the context of insurance, the right to equitable subrogation is generally based on two premises: (1) A wrongdoer should reimburse an insurer for payments that the insurer has made to its insured, and (2) an insured should not be allowed to recover twice from the insured's insurer and the tort-feasor.[8]

---

[4] *Coffey v. Planet Group*, 287 Neb. 834, 845 N.W.2d 255 (2014).

[5] Brief for appellee at 13.

[6] *Buckeye State Mut. Ins. Co. v. Humlicek*, 284 Neb. 463, 822 N.W.2d 351 (2012).

[7] See 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 222:2 (2005).

[8] *Buckeye State Mut. Ins. Co., supra* note 6.

### (b) Antisubrogation Rule

[5,6] Under the antisubrogation rule, no right of subrogation can arise in favor of an insurer against its own insured or coinsured for a risk covered by the policy, even if the insured is a negligent wrongdoer.[9] The antisubrogation rule has been extended to "implied coinsureds."[10] To allow subrogation under such circumstances would permit an insurer, in effect, to avoid the very coverage which its insured purchased.[11] In addition, the insurer should not be in a situation where there exists a potential conflict of interest which could affect the insurer's incentive to provide its insured with a vigorous defense.[12]

### (c) *Tri-Par Investments*

[7] In *Tri-Par Investments*,[13] a fire damaged a house that was being rented. After the landlord made a claim for coverage, its insurer initiated a subrogation action in the name of the landlord against the tenant, alleging negligence and breach of the lease agreement. We formally adopted the rule from *Sutton v. Jondahl*[14]: "[A]bsent an agreement to the contrary, the law presumes that a tenant is coinsured under a landlord's fire insurance policy and that therefore, a landlord's insurer cannot maintain a subrogation action against a tenant for damage to the insured property that is caused by the tenant's negligence."[15] The *Sutton* court explained that the law considers the tenant to be a coinsured of the landlord based upon "a relational reality, namely, that both landlord and tenant have an insurable interest in the rented premises—the former owns the fee and the latter has a possessory interest."[16] The

---

[9]  *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Tri-Par Investments, supra* note 1.

[14] *Sutton v. Jondahl*, 532 P.2d 478 (Okla. App. 1975).

[15] *Tri-Par Investments, supra* note 1, 268 Neb. at 124, 680 N.W.2d at 195.

[16] *Sutton, supra* note 14, 532 P.2d at 482.

district court in the instant case characterized *Sutton* as the "controlling case for liability of a tenant for a fire on the leased premises."

In *Tri-Par Investments*, we reasoned that the *Sutton* rule "represents the better public policy"[17] for several reasons. We stated that it "prevents landlords from engaging in gamesmanship when drafting leases by providing the necessary incentive for them, if they so desire, to place express subrogation provisions in their leases."[18] It also "comports with the reasonable expectations of tenants" and "accounts for modern commercial realities by preventing the economic waste that will undoubtedly occur if each tenant in a multiunit dwelling or multiunit rental complex is required to insure the entire building against his or her own negligence."[19]

## 2. Whether Issues Regarding Paragraph 17 Were Raised

### (a) Issue

SFI first assigns that the district court erred in ruling upon paragraph 17 of the lease, because the issue was outside the pleadings. The district court determined that paragraph 17 of the lease was void as against public policy and unconscionable. Carroll responds that she specifically raised both defenses in her answer and that paragraph 17 was incidental to the paragraphs she specifically attacked.

### (b) Standard of Review

[8] A question concerning the waiver of an affirmative defense involves the interpretation of Neb. Ct. R. Pldg. § 6-1108(c) and, as such, is a question of law reviewed de novo.[20]

---

[17] *Tri-Par Investments*, *supra* note 1, 268 Neb. at 131, 680 N.W.2d at 199.

[18] *Id.*

[19] *Id.*

[20] See *Harbeson v. Parke Davis, Inc.*, 746 F.2d 517 (9th Cir. 1984).

### (c) Additional Facts

Carroll's answer included two allegations pertinent to our discussion of this issue. She alleged that SFI's claims were barred because SFI and Carroll were considered coinsureds under *Tri-Par Investments*. She also alleged that paragraphs 10q, 15, and 16 of the lease were unconscionable and void as against public policy.

Paragraph 10q of the lease provided, in relevant part, that Carroll agreed "[t]o hold [SFI] harmless for any loss or liability, including attorney fees, for any personal injury or accident sustained by [Carroll] or Others, except where said injury results from the active and actionable gross negligence of [SFI.]"

Paragraphs 15 and 16 of the lease addressed indemnification and liability. These provisions stated:

> 15. INDEMNIFICATION:
>
> Resident will indemnify and save Landlord harmless from and against any and all claims, action, damages, liability and expenses in connection with loss of life, personal injury, and/or damage to property, arising from any act or omission of Resident or Others.
>
> 16. LIABILITY:
>
> Resident agrees that all property kept in the Premises shall be at the risk of Resident. Resident further agrees to indemnify and hold Agent and Owner harmless from any loss, lawsuit, or damages incurred as a result of any loss or damage sustained by action of any third party; fire, water, theft, or the elements, or for loss of any articles from any cause from said Apartment or any other portion of the Premises. Resident also indemnifies and holds Agent and Owner harmless from any lawsuit or damages resulting from any injury to Resident or Others entering the Apartment building property of which the premises is a part. Resident shall be responsible for obtaining fire, extended coverage and liability insurance with respect to the contents of the Apartment.

### (d) Discussion

[9-11] We acknowledge that the issues in a given case will be limited to those which are pled.[21] And we acknowledge that under the controlling rule, a party pleading to a preceding pleading must set forth affirmatively matters constituting an avoidance or affirmative defense.[22] But we have also recognized that the federal rules of pleading, which Nebraska has generally adopted, were designed to liberalize pleading requirements.[23] Thus, our inquiry becomes whether SFI was afforded fair notice of the nature of the defense.[24]

Read together, Carroll's allegations regarding *Tri-Par Investments* and the conscionability of the lease provisions placed SFI on fair notice that the lease provisions imposing liability on Carroll for damages resulting from fire were being challenged. Although paragraph 17 focused on Carroll's personal property and her obligation to provide renter's insurance, insurance covering Carroll's potential liability to SFI for fire damages caused by her negligence reasonably related to her allegations regarding *Tri-Par Investments*. SFI was placed on fair notice that paragraph 17 was material to the issues raised by Carroll's answer.

### (e) Resolution

Paragraph 17 of the lease was fairly raised in the proceeding by the allegations of Carroll's answer. SFI's first assignment of error lacks merit.

### 3. PARAGRAPH 17 IN RELATION TO *TRI-PAR INVESTMENTS*

### (a) Issue

SFI next assigns that the district court erred in determining that SFI's action was barred by *Tri-Par Investments*.[25]

---

[21] See *Rickerl v. Farmers Ins. Exch.*, 277 Neb. 446, 763 N.W.2d 86 (2009).

[22] See § 6-1108(c).

[23] See *Weeder v. Central Comm. College*, 269 Neb. 114, 691 N.W.2d 508 (2005).

[24] See *id.*

[25] *Tri-Par Investments, supra* note 1.

### (b) Standard of Review

[12] The interpretation of a lease,[26] the unconscionability of a contract provision,[27] and the determination of whether a contract violates public policy[28] are questions of law.

[13] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court.[29]

### (c) Discussion

SFI argues that the rule announced in *Tri-Par Investments* is inapplicable to the instant case. We agree. SFI brought this action against Carroll to recover damages which were not covered by its insurance policy. This is not a subrogation action brought by SFI's insurer to recover sums the insurer paid to SFI. And because this is not a subrogation action, the antisubrogation rule adopted in *Tri-Par Investments* does not apply. Accordingly, the district court erred to the extent that it relied upon *Tri-Par Investments* and *Sutton* as controlling precedent.

But as we noted at the outset of the analysis, Carroll concedes that this is not a true subrogation claim. And she argues that the principles of *Tri-Par Investments* and *Sutton* should be extended to the landlord's uninsured loss. We examine paragraph 17 in that context.

Paragraph 17 notified Carroll that (1) her personal property was not insured or covered by SFI for loss of any kind, (2) renter's insurance was required, and (3) the renter's insurance needed to include personal liability coverage to a minimum of $100,000. The district court stated that paragraph 17 was "[t]he crux of the instant case" and that it was "void for public policy and unconscionable because [SFI] cannot require each of its tenants to insure its building."

---

[26] See *Beveridge v. Savage*, 285 Neb. 991, 830 N.W.2d 482 (2013).

[27] See *Myers v. Nebraska Invest. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006).

[28] See *Lexington Ins. Co. v. Entrex Comm. Servs.*, 275 Neb. 702, 749 N.W.2d 124 (2008).

[29] *Id.*

SFI does not dispute that it is not in the public interest to require all tenants to insure the building in which they share. But SFI asserts that paragraph 17 does not require tenants to insure the building. We agree. Paragraph 17 provides that the tenant's *personal property* is not insured or covered by SFI's insurance coverage and that the resident must obtain renter's insurance to include personal liability coverage to a minimum of $100,000.

[14] We discussed a similar lease provision regarding insurance in *Beveridge v. Savage*.[30] In that case, a provision of the lease stated that "'[t]he Tenant shall provide a liability and renter[']s insurance [policy] ($100,000) at Tenant's expense.'"[31] We explained: "'Renter's insurance is a "contents" policy which covers tenant's possessions, such as furniture, appliances, personal belongings, and household goods.' . . . 'However, renter's insurance does not typically cover the structure of the leased premises.'"[32] We reasoned that "[t]he lease provision requiring the tenant to obtain renter's insurance did not require the tenant to insure the building against loss by fire."[33] Similarly, although paragraph 17 required Carroll to obtain renter's insurance, it did not require her to insure the entire building. The district court's concern that paragraph 17 would require each tenant to insure the entire rental complex is unfounded.

[15,16] Courts should be cautious in holding contracts void on the ground that the contract is contrary to public policy; to be void as against public policy, the contract should be quite clearly repugnant to the public conscience.[34] We find no such repugnancy. Further, the term "unconscionable" means manifestly unfair or inequitable.[35] Nothing in paragraph 17 strikes us as manifestly unfair or inequitable.

---

[30] *Beveridge*, *supra* note 26.

[31] *Id*. at 993, 830 N.W.2d at 485.

[32] *Id*. at 997, 830 N.W.2d at 487.

[33] *Id*.

[34] *Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535 (1988).

[35] *Myers*, *supra* note 27.

[17-20] Moreover, the Uniform Residential Landlord and Tenant Act[36] contemplates that a court may determine a lease provision to be unconscionable, but expressly upholds tenants' liability for negligent fire damage. Where a court finds that a rental agreement or any provision thereof was unconscionable when made, the court may refuse to enforce the agreement, enforce the remainder of the agreement without the unconscionable provision, or limit the application of any unconscionable provision to avoid an unconscionable result.[37] But the act treats fire damage caused by a tenant's negligence differently. Section 76-1429 regulates the landlord-tenant relationship where the property is damaged by fire. "Notwithstanding the provisions of this section, the tenant is responsible for damage caused by his [or her] negligence."[38] To the extent there is conflict between two statutes on the same subject, the specific statute controls over the general statute.[39] Where a specific statute holds a tenant responsible for fire damages caused by his or her negligence, we cannot hold a lease provision doing so void as against public policy or unconscionable.

Carroll relies on a New Hampshire decision extending the *Sutton* rule to uninsured fire losses. In *Cambridge Mut. Fire Ins. Co. v. Crete*,[40] the landlords' insurer brought a subrogation action against the tenant of a building that sustained extensive fire damage for the amount paid to the landlords under a fire insurance policy. The landlords also sought reimbursement from the tenant for their uninsured losses. In addition to following the *Sutton* rule regarding the subrogation claim, the New Hampshire court held that a landlord may not hold a tenant liable for any uninsured losses as a result of fire damage where the landlord did not have adequate insurance.

---

[36] Neb. Rev. Stat. §§ 76-1401 to 76-1449 (Reissue 2009).

[37] § 76-1412(1).

[38] § 76-1429(2).

[39] *Jeffrey B. v. Amy L.*, 283 Neb. 940, 814 N.W.2d 737 (2012).

[40] *Cambridge Mut. Fire Ins. Co. v. Crete*, 150 N.H. 673, 846 A.2d 521 (2004).

Carroll's reliance on the New Hampshire decision is misplaced. The *Sutton* decision did not address uninsured losses, particularly those allegedly caused by a tenant's negligence. Thus, the New Hampshire court extended the rule beyond the rationale of the *Sutton* decision. And the court provided no other support for that part of its decision. At least where a tenant negligently causes the fire damage, we cannot extend the *Sutton* rule to uninsured losses where a statute expressly declares the tenant to be responsible.[41] Moreover, the *Sutton* rule is premised on the idea that to allow subrogation under such circumstances would permit an insurer, in effect, to avoid the very coverage which its insured purchased. Where the damages are not covered by the landlord's insurance, this rationale disappears.

Of course, we are mindful that the district court's decision was made on summary judgment focusing on an issue of law. The question of whether the fire damage was caused by any negligence on Carroll's part has not been determined by the district court, and accordingly, we express no opinion on that issue.

### (d) Resolution

Because we conclude that paragraph 17 is not void as against public policy or unconscionable, the district court erred in entering summary judgment for Carroll upon that basis. The summary judgment must be reversed, and the cause remanded for further proceedings consistent with this opinion.

## 4. Denial of Motion for Partial Summary Judgment

### (a) Issue

Finally, SFI assigns that the district court erred in denying its motion for partial summary judgment seeking a ruling that paragraphs 10q, 15, and 16 of the lease were not unconscionable or void as against public policy, as Carroll had alleged in her answer. The district court denied the motion without discussion.

---

[41] See § 76-1429(2).

### (b) Standard of Review

As we explained above, questions regarding whether the lease was unconscionable or was void as against public policy are questions of law, which we review de novo.

### (c) Discussion

[21] We first note that we have jurisdiction of this issue. Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct such further proceedings as it deems just.[42] Because the court sustained Carroll's motion for summary judgment, we have jurisdiction over the denial of SFI's motion.

And to the extent that Carroll's arguments regarding conscionability and public policy rest upon extending the *Tri-Par Investments* rule to a landlord's uninsured fire losses allegedly caused by a tenant's negligence, we have already rejected them in discussing paragraph 17. The same rationale would apply to the other paragraphs.

But the unresolved issues of fact regarding Carroll's negligence, if any, prevent us from going any further. The litigation below has not focused on whether any of the challenged paragraphs of the lease would impose liability upon Carroll for damage to SFI's property that was not attributable in any way to Carroll's negligence.

We encountered an analogous situation in *Kuhn v. Wells Fargo Bank of Neb*.[43] We agreed with a landlord that the district court erred in sustaining a tenant's motion for summary judgment and concluding as a matter of law that an indemnity clause in the lease was ambiguous and unenforceable. But we declined to direct that the landlord's motion for summary

---

[42] *U.S. Bank Nat. Assn. v. Peterson*, 284 Neb. 820, 823 N.W.2d 460 (2012).

[43] *Kuhn v. Wells Fargo Bank of Neb*., 278 Neb. 428, 771 N.W.2d 103 (2009).

judgment against the tenant be granted. There was no evidence establishing that the landlord was liable to the injured party, who fell into an elevator car stationed "'about a foot'" below floor level.[44] We directed that the cause be remanded for further proceedings consistent with our opinion. Although the facts in *Kuhn* were considerably different, the same principle applies to the instant case. The focus has been on the *Tri-Par Investments* rule. The circumstances dictate that we likewise remand the cause for further proceedings consistent with this opinion.

### (d) Resolution

Under the circumstances of this case, we decline to direct entry of partial summary judgment in favor of SFI. Rather, we remand the cause for further proceedings.

### VI. CONCLUSION

The judgment of the district court granting Carroll's motion for summary judgment and dismissing SFI's complaint is reversed, and the cause is remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

---

[44] *Id.* at 432, 771 N.W.2d at 110.

---

STATE OF NEBRASKA, APPELLEE, V.
FRANCISCO C. RODRIGUEZ, APPELLANT.
___ N.W.2d ___

Filed August 1, 2014.    No. S-13-325.

1. **Jurisdiction: Appeal and Error.** Subject matter jurisdiction is a question of law for the court, which requires an appellate court to reach a conclusion independent of the lower court's decision.
2. **Statutes: Legislature: Intent: Appeal and Error.** In construing a statute, an appellate court's objective is to determine and give effect to the legislative intent of the enactment.